SAN BERNARDINO COUNTY FLOOD CONTROL DISTRICT et al., Petitioners, v. THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent; EAST SAN BERNARDINO COUNTY WATER DISTRICT, Real Party in Interest.

Stanford D. Herlick, County Counsel, and E. H. Robinson, Jr., Deputy County Counsel, for Petitioners.

No appearance for Respondent.

Sherwood Green, Denslow Green and Robert J. Farrell for Real Party in Interest.

TAMURA, J.—The San Bernardino County Flood Control District (Flood Control District) seeks a writ of prohibition to restrain respondent superior court from exercising jurisdiction over an eminent domain action brought by the East San Bernardino County Water District (Water District) to condemn a "non-exclusive easement" in the beds and banks of certain watercourses and flood control channels which are presently owned by the Flood Control District and appropriated to flood control purposes. In the court below the Flood Control District, by demurrer and motions for summary judgment and for dismissal unsuccessfully challenged the power of the Water District to maintain the action.

The events giving rise to the controversy between the two public agencies may be summarized as follows:

The Flood Control District was created by the Legislature in 1939 with boundaries coterminous with the boundaries of the County of San Bernardino. (Stats. 1939, ch. 73.) It is the fee owner of, or has easements for flood control purposes over, the beds and banks of certain watercourses and flood control channels located in and near the easterly portion of the City of San Bernardino. Over the years, through three federally financed flood control projects, the district has caused extensive protective work to be constructed in and along the streams and channels. In 1961, pursuant to the district's

request, the United States Congress authorized and appropriated funds for an investigation by the Army Corps of Engineers respecting the necessity for and recommended design of a proposed new project to control storm and flood waters in an area known as Upper Warm Creek. The Corps of Engineers undertook the investigation and completed its study at a cost of $200,000. The district engineer has approved and recommended to the chief engineer of the corps the construction of an integrated flood control system for the area including the concrete lining of over eleven miles of watercourses and channels and the construction of debris dams and sinking basins. The total estimated cost of the project is $11,020,000, of which $7,850,000 would be borne by the federal government and $3,170,000 by the district and state. Based on preliminary reports, the State of California has declared the project to be consistent with the state Water Plan.

In January 1967, at a public hearing on the proposed project conducted by the Corps of Engineers in San Bernardino, Water District objected to that feature of the proposed project calling for concrete lining of watercourses and channels on the ground that it would prevent percolation of waters into the underground basin.

Water District is a county water district organized in 1954 under the provisions of division 12 of the Water Code, and its boundaries embrace the easterly portion of the City of San Bernardino. In May 1967 Water District filed an eminent domain action against Flood Control District and others to condemn ''a nonexclusive easement for the use of the bed and banks'' of certain named watercourses and flood control channels. including Warm Creek and its tributaries, ''for the spreading, sinking, controlling and storing'' the waters of the streams and channels for the beneficial use of the district and its inhabitants, exclusive, however, of the right to enlarge the watercourses and channels. It is conceded that the action was precipitated by Flood Control District's proposed project.

Both in the court below, and in this court, the parties have filed declarations which, in addition to the facts heretofore recited, state the following:

The flood control engineer states: that extensive residential and commercial developments coupled with recent watershed burns necessitate construction of the proposed Upper Warm Creek project; that the Army Corps of Engineers recom-

mended against earth bottom channels because, in addition to the cost of additional rights-of-way which would be required, construction costs would exceed 185 percent of the cost of concrete lining; that in his opinion earth bottom channels would expose adjacent properties to higher risks and involve higher maintenance and operational costs than lined channels, and that in his opinion Water District can provide offstream spreading facilities for conservation purposes without interfering with the design of the proposed project.

The manager of the Water District and its consulting engineer state that the district embraces approximately 6,500 acres of the easterly portion of the City of San Bernardino, that it provides water for municipal and domestic purposes to approximately 34,000 inhabitants, that the district is largly dependent upon the ground water basin for its source of water supply and in order to maintain that supply acquires and percolates surface waters from various sources, that concrete lining of the channels and watercourses as proposed by Flood Control District would prevent percolation and result in an estimated average annual ground water loss to the basin from which the district derives its water supply of 2,320 acre feet, that it is both practical and feasible to line the sides of the streams and channels for flood protection but to leave the bottom open to permit continued replenishment of the underground basin by percolation, and that such a design would fulfill flood control and conservation purposes at the same time, and that such uses of the watercourses and channels are compatible and may be enjoyed in common.

Flood Control District contends that Water District is without legislative authority to condemn the interest sought and that, under the guise of an eminent domain action, Water District is attempting to dictate the design of flood control projects. On the other hand, Water District contends that it is merely seeking to impose a "non-exclusive easement" for the use of beds and banks of the streams and channels for water conservation purposes, that it is empowered to maintain the action if the use for which it seeks to take the property is compatible with flood control uses, and that the trial court has jurisdiction to resolve the factual issue of compatibility. The trial court concluded that Water District's right to maintain its action turned on the question of compatibility of uses and that that was a factual issue to be resolved after a full scale trial.

The question whether Water District is empowered to maintain the eminent domain action is properly before us. ■ When the power of a condemning agency to maintain an eminent domain action has been raised in the trial court "by demurrer, motion, plea, or other objection of some kind" and that court has resolved the jurisdictional challenge in favor of the condemnor, the issue may be properly raised by an application for a writ of prohibition. (*Harden* v. *Superior Court,* 44 Cal.2d 630, 637 [284 P.2d 9].) If it is determined that the condemnor is not empowered to maintain the action, a writ of prohibition may properly issue to restrain the court from acting in "excess" of its jurisdiction by proceeding with the action. (*County of Marin* v. *Superior Court,* 53 Cal.2d 633, 636 [2 Cal.Rptr. 758, 349 P.2d 526]; *Harden* v. *Superior Court, supra,* 44 Cal.2d 630, 637; *Northwestern Pac. R.R. Co.* v. *Superior Court,* 34 Cal.2d 454, 458-459 [211 P.2d 571].) Where, as in the present case, a full scale trial would be costly—the taxpayers bearing the burden irrespective of the party incurring the cost—, may jeopardize federal, state and district cooperation, and would delay the construction of public improvements for the protection of life and property, remedy by way of appeal is inadequate. (*Harden* v. *Superior Court, supra,* at p. 635; see *Corona etc. Hospital Dist.* v. *Superior Court,* 61 Cal.2d 846, 850-852 [40 Cal.Rptr. 745, 395 P.2d 817].)

The authority of the Water District to maintain its action turns upon the proper application of certain basic principles of the law of eminent domain. ■ First, although the power of eminent domain is inherent in government, neither the state, its political subdivisions, municipalities, or public districts may exercise the power in the absence of legislative authorization, granted either expressly or by necessary implication. (*City of Beaumont* v. *Beaumont Irr. Dist.,* 63 Cal.2d 291, 293 [46 Cal.Rptr. 465, 405 P.2d 377]; *County of Marin* v. *Superior Court, supra,* 53 Cal.2d 633, 636; *People* v. *Superior Court,* 10 Cal.2d 288, 295-296 [73 P.2d 1221].) Second, property already appropriated to a public use ordinarily may not be taken (a) unless it is "for a more necessary public use,"[1] or (b) unless, and only under certain limited circumstances, the public use for which the property is sought is one which is

---

[1] Code of Civil Procedure, sections 1240, subdivision 3, and 1241, subdivision 3; see *State* ex rel. *State Public Works Board* v. *City of Los Angeles,* 256 Cal.App.2d 930, 933 [64 Cal.Rptr. 476]; *People* v. *City of Los Angeles,* 179 Cal.App.2d 558, 564 [4 Cal.Rptr. 531].)

consistent with and may be enjoyed in common with the use to which the property is presently appropriated.[2] The Legislature may, of course, prohibit a taking for another public use.[3]

Although it is so alleged in the complaint, Water District does not seriously contend that the purpose for which it is seeking "a non-exclusive easement" in the beds and banks of the watercourses and channels is "for a more necessary public use" than that to which they are presently devoted.

The San Bernardino County Flood Control District was created by the Legislature to provide flood control protection and to conserve storm and flood waters for beneficial use within the district.[4] It is authorized to exercise the power of

[2] Code of Civil Procedure, section 1240, subdivisions 3 and 6; *Reclamation Dist. No. 551* v. *Superior Court*, 151 Cal. 263 [90 P. 545]; *City of Pasadena* v. *Stimson*, 91 Cal. 238 [27 P. 604]; *Los Angeles* v. *Los Angeles Pac. Co.*, 31 Cal.App. 100 [159 P. 992]; see *City of Oakland* v. *Schenck*, 197 Cal. 456 [241 P. 545].)

[3] (See Code Civ. Proc., §§ 1240, subd. 3, and 1241, subd. 3; *City of Beaumont* v. *Beaumont Irr. Dist.*, 63 Cal.2d 291, 297 [46 Cal.Rptr. 465, 405 P.2d 377]; *County of Marin* v. *Superior Court*, 53 Cal.2d 633, 637 [2 Cal.Rptr. 758, 349 P.2d 526].) Flood Control District argues that its property is immune from this taking by virtue of the exemptions contained in the last sentence of subdivision 3 of section 1241, which reads: "But private property appropriated to the use of any county, city and county, incorporated city or town, or municipal water district, or irrigation district, or transit district, or rapid transit district, or public utility district, or water district, may not be taken by any other county, city and county, incorporated city or town, or municipal district, or irrigation district, or transit district, or rapid transit district, or public utility district, or water district, while such property is so appropriated and used for public purposes for which it has been so appropriated."

Flood Control District contends that it is an entity falling within the classification of "water district" as that term is used in the section. We have serious doubts that in granting immunity to property appropriated to the use of a water district, the Legislature meant to include Flood Control Districts (see *East Bay Municipal Utility Dist.* v. *Railroad Com.*, 194 Cal. 603, 619 [229 P. 949]), but in view of the conclusion we reach, it is unnecessary to decide that question.

[4] Section 2 of the San Bernardino County Flood Control Act, (Act), Statutes 1939, chapter 73, provides in part: "The objects and purposes of this act are to provide for the control of the flood and storm waters of said district and the flood and storm waters of streams that have their source outside of said district, but which streams and the flood waters thereof flow into said district, and to conserve such waters for beneficial and useful purposes by spreading, storing, retaining and causing to percolate into the soil within said district, or without such district, such waters, or to save or conserve in any manner all or any of such waters and protect from such flood or storm waters, the watercourses, watersheds, public highways, life and property in said district, and to prevent waste of water or diminution of the water supply in, or exportation of

eminent domain ''to take any property necessary to carry out any of the objects or purposes of this act, whether such property be already devoted to the same use by any district or other public corporation or agency or otherwise, and to condemn any existing works or improvements in said district now or hereafter used to control flood or storm waters or to conserve such flood or storm waters or to protect any property in said district from damage from such flood or storm waters, . . .''[5] It is granted express authority to act in cooperation with state and federal agencies in the construction of improvements for flood control and water conservation purposes.[6]

By granting the Flood Control District comprehensive powers over the control and conservation of storm and flood waters, including the power to condemn property already appropriated by a public district or public corporation ''to control flood waters or to conserve such flood or storm waters,'' the Legislature has by implication determined that the uses proposed by Flood Control District in the instant case are to be considered a more necessary public use than that proposed by Water District. This legislative determination is binding on the courts. (See *State* ex rel. *State Public Works Board* v. *City of Los Angeles*, 256 Cal.App.2d 930, 933-934 [64 Cal.Rptr. 476]; *Barry* v. *Department of Public Works*, 199 Cal.App.2d 359, 363 [18 Cal.Rptr. 637].)

Even in the absence of such clear legislative intent, Water District's proposed use could not be held to be a more necessary public use. The construction of improvements in and along channels and watercourses for the protection of lives and property is of primary concern to the State.[7] In another context, it has been observed that ''[t]he construction of improvements along a stream for purposes of flood control is no less essential to the public health and safety than the grading of streets. . . .'' (*O'Hara* v. *Los Angeles County Flood*

water from said district, and to obtain, retain and reclaim drainage, storm, flood and other waters for beneficial use in said district.''

[5]Section 2, subdivision 8, of the Act.

[6]Section 2, subdivision 9, of the Act.

[7]Section 12578 of the Water Code provides: ''It is hereby declared that the people of the State have a primary interest in the control and conservation of flood waters, prevention of damage by flood waters, the washing away of river and stream banks by floods, and in the determination of the manner in which flood waters shall be controlled for the protection of life and property and the control, storage, and use of the State's water resources in the general public interest.''

*etc. Dist.,* 19 Cal.2d 61, 63 [119 P.2d 23].) The conservation of storm and flood waters, the avowed objective of Water District's eminent domain action, is as much a statutory duty and responsibility of the Flood Control District as it is of the Water District. It must be presumed that the board of supervisors of the Flood Control District will perform its official duties and that in designing and constructing the proposed flood control project, it will make proper provisions for conservation as well as flood protection. (Evid. Code, § 664; see *City of Beaumont* v. *Beaumont Irr. Dist., supra,* 63 Cal.2d 291, 297.)

Water District bases its right to maintain its eminent domain action to acquire "non-exclusive easement" in the beds and banks of the streams and channels primarily on the ground that it is one which can be exercised without interfering with their use for flood control purposes. It contends that the right of one public agency, by eminent domain, to impose a public servitude on an existing public servitude when the uses are compatible is recognized both by judicially established principles and by statute.

The most familiar instances of common use involve crossings, intersections of rights-of-way, or the maintenance of utility transmission facilities in highway rights-of-way. Manifestly in such situations the imposition of the second servitude would not impair the enjoyment of the existing easement. The general principle has been stated as follows: "A particular public easement may be imposed upon land already subject to a different public easement without express legislative authority if the exercise of the second easement will not interfere with the exercise of the first, or if the amount of land taken is not enough to impair the use of the remainder for the original purpose. [Footnote omitted.] This rule has been extended so as to justify the imposition of an easement without express legislative authority upon land already devoted to a different public use, even to the detriment of the prior use, when such detriment is trivial and the two easements can be exercised at the same time without serious conflict, and the expense of laying out the second work over private land would be wholly disproportionate to the injury to the earlier undertaking from the encroachment upon its location. . . ." (1 Nichols, Eminent Domain [rev.3d ed. 1964], § 2.2[8], pp. 237-238.)

In this state, subdivisions 3 and 6 of section 1240 of the

Code of Civil Procedure[8] govern a taking for a common compatible public use and sections 1247 and 1247a of the Code of Civil Procedure empower the court to regulate the manner in which common uses shall be enjoyed.[9]

There are very few decisions in this state involving the common use provisions of subdivisions 3 or 6 of section 1240 and those that have considered those provisions are not helpful in resolving the issue here presented. None involved a situation comparable to that presented in the case under review. It has been held that the statute authorized the taking of an easement for the installation and maintenance of a sewer line in a highway right-of-way. (*City of Pasadena* v. *Stimson*, 91 Cal. 238, 255 [27 P. 604].) In *Reclamation Dist. No. 551* v. *Superior Court*, 151 Cal. 263 [90 P. 545], a railroad company sought to condemn a longitudinal use of the top of a reclamation district levee for a railroad right of way. The court

---

[8]The relevant provision of subdivision 3, section 1240, Code of Civil Procedure, provides: ''and provided, further, that where property already appropriated to a public use or purpose, by any person, firm or private corporation, is sought to be taken by the state, a county, city and county, incorporated city or town, joint highway district, irrigation or municipal water district, for another public use or purpose, which is consistent with the continuance of the use of such property or some portion thereof for such existing purpose, to the same extent as such property is then used, or to a less or modified extent, then the right to use such property for such proposed public purpose, in common with such other use or purpose, either as then existing, or to a less or modified extent, may be taken by the state, such county, city and county, incorporated city or town, joint highway district, or irrigation or municipal water district, and the court may fix the terms and conditions upon which such property may be so taken, and the manner and extent of the use thereof for each of such public purposes, and may order the removal or relocation of any structures, or improvements therein or thereon, so far as may be required by such common use. . . .''

Subdivision 6, section 1240, provides: ''All rights-of-way for any and all the purposes mentioned in section 1238, and any and all structures and improvements on, over, across or along such rights-of-way, and the lands held or used in connection therewith shall be subject to be connected with, crossed, or intersected by or embraced within any other right-of-way or improvements, or structures thereon. They shall also be subject to a limited use, in common with the owner thereof, when necessary; but such uses, crossings, intersections, and connections shall be made in manner most compatible with the greatest public benefit and least private injury.''

[9]Subdivision 1 of section 1247 provides: ''The court shall have power: 1. To regulate and determine the place and manner of making connections and crossings, or of enjoying the common use mentioned in subdivision 6 of Section 1240; . . .''

Section 1247a provides: ''The court shall also have power to regulate and determine the place and manner of removing or relocating structures or improvements, or of enjoying the common use mentioned in subdivision 3 of Section 1240.''

declined to hold that the two uses were inconsistent as a matter of law. In *Los Angeles* v. *Los Angeles Pac. Co.*, 31 Cal. App. 100 [159 P. 992], the court held that the question whether the taking of land for a city park required the taking of an existing right-of-way for electrical transmission lines presented a factual question of compatibility of the two uses.

The resolution of the question whether a proposed new use may co-exist with the continuance of an existing use requires a consideration, not only of the existing physical use being made of the property, but such use thereof as may be reasonably necessary for the purpose to which it is appropriated. (11 McQuillin, Municipal Corporations (3d ed. rev.) p. 430; cf. *East Bay Municipal Utility Dist.* v. *Lodi*, 120 Cal. App. 740, 750 [8 P.2d 532].) The question is whether "the *exercise* of the second easement will not interfere with the *exercise* of the first." [Italics supplied.] (1 Nichols, Eminent Domain, *supra*, p. 237.)

In the case under review Water District seeks the use of the beds and banks of the channels and watercourses "for the spreading, sinking, controlling and storing" waters of those channels and streams whereas the Flood Control District, pursuant to the statutory authority vested in it and in the exercise of its rights in the channel beds and banks, in cooperation with the United States Army Corps of Engineers, has investigated the need for additional flood control protection in the area and has designed and proposes to construct a system which includes the concrete lining of watercourses and channels. The use sought to be made of the beds and banks by Water District is manifestly in direct conflict with the use proposed by and authorized to be made by Flood Control District.

While reasonable minds might differ respecting the compatibility of the uses sought to be imposed on existing uses under the circumstances presented in *Reclamation Dist.* v. *Superior Court, supra,* 151 Cal. 263, and *Los Angeles* v. *Los Angeles Pac. Co., supra,* 31 Cal.App. 100, in the case under review the admitted facts reveal the use sought to be imposed to be patently so directly in conflict with the continuance of the existing use that the two must be held to be inconsistent as a matter of law.[10]

[10]We assume for the purpose of the present opinion that, apart from the issue of compatibility of uses, the property sought to be taken and

The conflict may not be avoided on the ground that experts differ on the question whether proper flood control protection may be provided without paving the channels and that, therefore, the compatibility issue is a factual one to be determined after a full scale trial and finding by the trial court. The Legislature has delegated to the board of supervisors of the Flood Control District the power to design and construct needed flood control improvements. The board is empowered "to construct, maintain and operate any and all works or improvements within or without the district necessary or proper to carry out any of the objects or purposes of this act, . . . to . . . repair or otherwise improve any works or improvements or property acquired by it as authorized by this act, . . ." (Section 2, subd. 5, of the Act), to employ engineers *"to investigate carefully the best plan or plans* to control the flood and storm waters of said district, . . ." (Section 5 of the Act), and "to cooperate with and to act in conjunction with the State of California, . . . or with the government of the United States, . . . in the construction of any work for the controlling of flood or storm waters of said district, or for the protection of life or property therein, or for the purpose of conserving said waters for beneficial use within said district, . . . and *to adopt and carry out any definite plan or system of work for any such purpose.*" [Italics supplied.] (Section 2, subd. 9, of the Act.)

In *County of Marin* v. *Superior Court, supra,* 53 Cal.2d 633, a municipal water district sought to condemn for a reservoir site county roads which were a part of a federal aid secondary highway system constructed with federal funds. Upon discovering that its project would inundate the roads, the water district offered to relocate them, but being unable to reach an agreement with the county over the terms of the relocation and reconstruction of the roads, it filed eminent

---

the use sought to be made by the Water District qualify for common use under subdivisions 3 or 6 of section 1240 of the Code of Civil Procedure. However, there is a question whether property appropriated to a public use by a *public corporation* may be taken for a common use under subdivision 3, and it is doubtful whether the rights sought to be taken by the Water District constitute a "right-of-way" within the meaning of subdivision 6. The common use provision of subdivision 3 refers to property appropriated to a public use by "any individual, firm or *private corporation,*" and subdivision 6 relates to imposition of a "right-of-way" servitude on existing "rights-of-way." In view of our conclusion that the proposed use by the Water District is inconsistent with flood control uses as a matter of law, we find it unnecessary to express any opinion on the foregoing questions.

domain proceedings in an attempt to have the court resolve the dispute. The court held that the last sentence of subdivisions 3 of sections 1240 and 1241 of the Code of Civil Procedure immunized property appropriated to the use of a county from condemnation by a municipal water district and that the district was therefore without authority to maintain the action. In addition, however, the court noted that the avowed purpose of the water district in filing the eminent domain action was to have the superior court order and prescribe the terms of the proposed relocation of the roads. In rejecting the contention that section 1247a of the Code of Civil Procedure empowered the superior court to order relocation or to prescribe the conditions thereof, the court stated: ''Though it be conceded that the provision just mentioned does authorize the trial court, generally, to adopt a plan for the relocation of property appropriated to a public use by a public agency, nevertheless, it is equally manifest, under the provisions of the aforesaid federal act, enacted as the law of this state, that the real party in interest herein and the superior court are precluded from selecting projects and adopting specifications therefor as is threatened in the case at bar. Those tasks, along with the actual construction of all projects are specifically entrusted to the state highway department and the appropriate local highway officials, subject only to approval by the United States Secretary of Commerce. (23 U.S.C.A., §§ 105, subd. b, 106, subd. b, 114.) What we have just said would appear to be an added reason why prohibition should issue herein, to prevent the court below from assuming functions which by law are entrusted to other agencies of government.'' (*County of Marin* v. *Superior Court, supra,* 53 Cal.2d 633, 642.)

In the present case, by filing the eminent domain action, Water District, in essence, is attempting to enjoin Flood Control District from constructing the proposed flood control project and to have the superior court redesign it. The rationale of the additional ground of the holding in *County of Marin* v. *Superior Court, supra,* 53 Cal.2d 633, is apposite. It provides a further reason for the issuance of a writ of prohibition in the present case.

We conclude that the Water District is not authorized to maintain the action in eminent domain. It is ordered that a peremptory writ of prohibition issue enjoining respondent court from taking any further proceedings against petitioner,

San Bernardino County Flood Control District, in the action entitled "East San Bernardino County Water District v. Esther L. Hayes, et al" (San Bernardino County Superior Court No. 136447).

McCabe, P. J., and Fogg, J. pro tem.,* concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied April 23, 1969. Mosk, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.