[No. 15426.   Department Two.—June 26, 1894.]

THE PEOPLE ET AL., APPELLANTS, *v.* COUNTY OF MARIN ET AL., RESPONDENTS.

|103   223|
107   204|
103   223|
126   540|

|103   223|
144   345|

AUTHORITY TO CLOSE UP PUBLIC HIGHWAY.—The authority to close up and alter public highways outside of municipalities is conferred upon the board of supervisors of the several counties of the state, and can only be exercised through the instrumentalities and in the mode prescribed by law.

ID.—POWER OF BOARD OF PRISON DIRECTORS—ESCAPE OF PRISONERS—OWNERSHIP BY STATE.—No power is given either by our constitution or laws to the board of prison directors to abolish public highways, and they cannot interdict public travel thereon, or interfere therewith by gates and obstructions, upon the ground that the highway may afford opportunities to facilitate the escape of prisoners; and the fact that the state owns the piece of land over which the public highway extends does not authorize it to divest the easement of the public.

ID.—DEDICATION OF HIGHWAY—ACCEPTANCE BY PUBLIC.—Where the owner of land has dedicated a road as a public highway, and the dedication has been accepted by the public or constituted authorities of the county, the dedication is complete.

ID.—INTENT TO DEDICATE—IMPLICATION FROM ACTS.—The question of intent to make a common-law dedication of land for a public highway is paramount, but the dedication may be express or implied, and if the donor's acts are such as indicate an intention to appropriate the land to the public use, upon acceptance by the public the dedication becomes complete.

ID.—EVIDENCE OF INTENT AND ACCEPTANCE—PETITION OF OWNER FOR HIGHWAY—INSUFFICIENT STATUTORY PROCEEDING—PUBLIC USES.—A petition by the owner of land to the board of supervisors to declare a road over his land a highway, is evidence of an intent on his part to dedicate it to the public use; and when the board of supervisors did so declare it, although the proceeding was not accompanied by all the forms required by the statute to constitute it a highway, in a statutory sense, its action is evidence of an acceptance by the board for the public use as such highway; which evidence, coupled with its use for a highway, and its improvement as such by public authority, is ample to support such an acceptance.

ID.—WIDTH OF HIGHWAY, WHEN IMMATERIAL.—In case of encroachment upon a highway, where the simple question is whether it is in fact a highway, no question is involved as to its width, and an objection that it is not shown to have a specified width is without force.

ID.—BOUNDARIES OF ROAD—USER—PRESUMPTION—DISCRETION OF OFFICERS.—Where the right of the public is acquired by user the boundaries of the road are generally ascertained by user; but where there is a statute fixing the width of all highways a dedication will be presumed to be of the width fixed by the statute, and where a discretion is given to officers to determine the width of a highway such discretion will not be interfered with, except in cases of fraud or oppression.

ID.—ACQUISITION OF LAND BY STATE—EASEMENT OF HIGHWAY—MERGER. Upon acquisition of land by the state over which a highway has been located the easement of the highway is not merged in the estate which the state has acquired to the land.

ID.—EASEMENT HELD IN TRUST.—The easement which may be held by the state in any highway is held as the representative of the people, and in trust, to enable the people to pass and repass at will, and is not held in the same right as the title of the state to lands which it has purchased.

ID.—TITLE OF STATE TO HIGHWAYS—LEGISLATIVE CONTROL—VACATION OF HIGHWAY.—In strictness all public highways belong to the state, which holds them for public use subject to legislative control, and the statute which provides that a road shall not be vacated or cease to be a highway until so ordered by the board of supervisors is binding upon the state as well as upon individuals.

COSTS—REVIEW UPON APPEAL.—The question of costs cannot be considered upon appeal where the record fails to show any objection to costs, and there is no bill of exceptions showing any ruling upon the question; nor where the judgment does not include costs, although the court below found, as a conclusion of law, that the defendants were entitled to it.

APPEAL from a judgment of the Superior Court of Marin County, and from an order denying a new trial.

The facts are stated in the opinion.

*Attorney General W. H. H. Hart,* and *Aylett R. Cotton,* for Appellant.

*James W. Cochrane,* and *Hepburn Wilkins,* for Respondent.

SEARLS, C.—This action is brought by the people of the state of California upon the information of the attorney general and by W. E. Hale, warden of the state's prison at San Quentin, California, and the board of state prison directors, as plaintiffs, against the county of Marin, the supervisors of said county, and J. Edwards, as roadmaster, defendants, to restrain them from interfering with certain gates and obstructions placed by plaintiffs upon a certain road running to, upon, and across the state prison grounds, and alleged to be a private road.

A restraining order issued in the case.

Defendants answered, averring that the road from San Rafael to Point San Quentin is a public highway,

and runs across and over the premises described in the complaint, viz., the state prison grounds, and admit their intention to remove gates and obstructions therefrom.

The cause was tried by the court without the intervention of a jury, written findings filed, and judgment entered thereon in favor of the defendants, from which judgment, and from an order denying a motion for a new trial, plaintiffs appeal.

The court found, among other things, that the state of California is, and ever since the twenty-fifth day of August, 1869, has been, the owner in fee of the tract or parcel of land described in the complaint, subject, however, to the easement or right of way in the public of the public road and highway known as the county road leading from San Rafael to Point San Quentin, which said road runs across said tract of land, and which said road is now, and has been for over thirty-five years last, a public road and highway of the county of Marin, and during all of said times has been used and traveled by the public as a public road and highway by all persons traveling from the town of San Rafael to the village of San Quentin, in the county of Marin, except that in the year 1891 and January, 1892, when W. E. Hale, warden of the state prison at San Quentin, California, placed gates and obstructions across the same; that the said county road is not and never was a private road, but that the same has been, ever since the year 1854, one of the public county roads of Marin county.

The first point made by the learned counsel for the people seems an extraordinary one.

It is, in substance, that, conceding the road in question a public highway, running through the prison grounds, still as the state prison is, by virtue of section 1573 of the Penal Code, under the charge, control, and superintendence of a board of directors, consisting of the govenor, lieutenant governor, and secretary of state, which board, under section 2 of article X of the constitution, it is provided shall have charge of the state prison, they

may, when they deem it expedient in the control of the prison, authorize the closing of the road, and the board, having by resolution ordered the highway closed, it ceased to be a public road.

The record shows that the state is seised in fee of a tract of land consisting of say one hundred and fifty acres, bounded in part by the bay of San Francisco, upon which the state prison is constructed, with necessary buildings and walls for the detention of prisoners, and with dwellings, guardhouses, etc., for the accommodations of officers, guards, and attachés, across which tract of land the highway in question runs.

Under the allegations of the complaint there was evidence tending to show that a portion of the prisoners perform labor and render services outside the prison walls, and that the proximity of the highway and the right of the public to travel thereon enables evil-disposed persons to secrete arms, ammunition, citizens' clothing, opium, etc., upon the grounds, where they are procured by prisoners, and by means whereof the escape of prisoners is facilitated, and the good order and discipline of the prison endangered. Conceding all these objections, and it is not perceived how it strengthens the case of the appellant.

If the road in question is a public highway it is so by virtue of having been dedicated to the public and abandoned as such by B. R. Buckelew, the owner of the land (under whom, by sundry mesne conveyances, the state holds title), about 1854, and by reason of having been accepted by the public, and used as a highway long before any title vested in appellant.

The authority to close up and alter public highways outside of municipalities is conferred upon the board of supervisors of the several counties of the state, and can only be exercised through the instrumentalities and in the mode prescribed by law.

The easement of the public in and to a public highway is as sacred as any other property right, and cannot be divested by the action of the owner of the servient

tenement in which it exists. No power is given either by our constitution or laws to the board of prison directors to abolish public highways.

The bay of San Francisco and the highway in question may each afford opportunities for evil-disposed persons to come within proximity to the prison for nefarious purposes, and the prison authorities had as much authority to interdict travel upon the one as the other. In other words, it can do neither. It follows that the judgment is supported by the findings.

We think the motion for a new trial was properly overruled.

The only question of practical importance relates to the sufficiency of the evidence to sustain the findings of dedication of the road as a public highway by B. R. Buckelew, the owner of the land over which it passed, and its acceptance by the public or by the constituted authorities of Marin county.

Dedication is the setting apart of land for the public use, and an essential requisite to its validity is that it must be of such a character as to conclude the owner. There are two kinds of dedication, viz., statutory and common-law dedication.

Of statutory dedication nothing will be said beyond stating the general rule, which is that, in order to constitute a valid statutory dedication, the provisions of the statute, whatever they may be, must be substantially complied with.

Common-law dedications are, for convenience of description, frequently subdivided by law-writers into two classes: express dedications and implied dedications.

The substantial difference between the two consists in the mode of proof. In the former case the intention to appropriate the land to public use is manifested by some outward act of the owner manifesting his purpose, while in the latter it is usually by such acts or conduct not directly manifesting the intention, but from which the law will imply the intent.

In *Waugh* v. *Leech*, 28 Ill. 488, it was said:

"The authorities show that dedications have been established in every conceivable way by which the intention of the party could be manifested."

And it may be said generally:

"If the donor's acts are such as indicate an intention to appropriate the land to the public use, then, upon acceptance by the public, the dedication becomes complete." (Elliott on Roads and Streets, 92.)

The question of intent is paramount, and without such intent expressly appears or can be fairly inferred from the acts of the donor there is no valid dedication.

Turning to the evidence set out in the record, and it appears that in 1854 B. R. Buckelew owned the land described in the complaint, and had a sawmill at Point San Quentin; that he needed a road to get to it, and that this road was laid out and graded from the town of San Rafael to Point San Quentin in 1854, or earlier, and was the only traveled road between the two points, and was used by the public generally.

The widow of B. R. Buckelew testified as follows:

"My husband always intended it for a public road. He said so before the year 1855"; and again, "he always intended a road there, and he was obliged to have one to get to the sawmill . . . . ; he wanted it as a public road, so that every one could travel on it."

William Patton testified, in substance, that in 1858 the road was a good wagon-road, over which the stages from Point San Quentin ran to San Rafael; that it was graded so that two teams could pass, and was called the *county road.*

A number of other witnesses had known the road since 1870 as a public highway in charge of the county officers, who kept it in repair, built bridges, culverts, etc. Convicts from the prison worked on it under the road overseer, working out the poll tax of the officers and attachés of the prison.

There was also evidence tending to show that prior to August 6, 1855, B. R. Buckelew filed with the board of

supervisors a petition asking that the road be declared a public highway.   This petition was lost or mislaid.

On the sixth day of August, 1855, an order appears in the record of the board of supervisors reciting the petition of Buckelew for this road, from Point San Quentin to San Rafael, as being presented.

On February 4, 1856, the board of supervisors of Marin county entered an order in their records which recites that, in pursuance of the petition of a large number of the citizens of Marin county praying for a public road between the town of San Rafael and the state prison in said county, etc., the order then recites that it appearing that a public road is necessary and important for the convenience of the citizens of said county, "it is hereby ordered by said board of supervisors that the road now leading from San Rafael to said state prison be, and the same is, hereby declared to be one of the public roads and highways of said county."

The order required the county surveyor to survey the road, and appointed viewers; also that a copy of the order be served upon said Buckelew forthwith, "to ascertain whether he has any objections to the above road."

The road was surveyed by the county surveyor, who shortly afterward saw Buckelew, and told him what he had done, whereupon the latter said it was all right.

The field notes of this survey were recorded in the office of the county surveyor, but, so far as appeared, no plat was ever recorded.

That the general public used the road as a public highway is established by the evidence beyond reasonable doubt.   It is said that all of this testimony fails to establish a statutory dedication of the highway.   This may be conceded, but "in many instances a dedication invalid as a statutory one will be a good common-law dedication."   (Elliott on Roads and Streets, 85, 86.)

When Buckelew petitioned the board of supervisors to declare the road a highway it was evidence of an intent on his part to dedicate it to the public use, and

when the board of supervisors so declared it, although the proceeding was not accompanied by all the forms required by the statute to constitute it a highway in a statutory sense, still it was evidence of an acceptance by the board for the public as such highway; which evidence, coupled with its uses for a highway, and its improvement as such by public authority, is ample to support an acceptance. (Elliott on Roads and Streets, 115, 116, 118.) Section 2619 of the Political Code, as it existed prior to February 28, 1883, provided that "all roads used as such for a period of more than five years are highways."

In *Bolger* v. *Foss*, 65 Cal. 250, this court said, alluding to the section quoted *supra:* "This is more than a declaratory law to the effect that the fact of use of a road as a public road for more than five years shall be evidence, *prima facie* or conclusive, of dedication by the owners of the lands through which it runs. It is in the nature of a statute of limitations, which gives to the public the right to use the road as a highway, in case it has been so used."

Since 1883 section 2618 of the Political Code reads as follows:

"In all the counties of this state public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges, laid out or erected as such by the public, or, if laid out or erected by others, dedicated or abandoned to the public, or made such in actions for the partition of real property."

In any view we take of the case, the evidence in support of the findings establishes the fact that the road in question, as early as 1856, was dedicated as a public highway, and accepted by the public as such, and by their agents, the supervisors of the county of Marin, and ever since has remained, and now is, a public highway.

The objection that it is not shown to have any specific width is without force in this action, which involves no question as to its width, or of encroachment upon it as

a highway, but the simple question whether it is in fact a highway.

It may be said, however, that where the right of the public is acquired by user the boundaries of the road are generally ascertained by reference to the user.

Where there is a statute fixing the width of all highways it has been said that the dedication to the purpose of a highway will be presumed to be the width fixed by the statute, and where discretion is given to certain officers to determine the width of a highway, such discretion will not be interfered with, except in cases of fraud or oppression. (*Humboldt County* v. *Dinsmore*, 75 Cal. 604.)

So, too, the theory is advanced that when in 1869 the state became the owner of the land over which the road is located the easement, if any, which previously existed therein being in the state was merged in the estate which the state acquired to the land.

As applied to the law of real property, it may be stated as a general rule that where a greater estate and a lesser coincide and meet in one and the same person in the same right, without any intermediary estate, the less is immediately annihilated, or, in the law phrase, is said to be merged, that is sunk or drowned, in the greater. In equity the rule is different. (*Rumpp* v. *Gerkens*, 59 Cal. 496.)

If a trustee holds a leasehold estate in a piece of land in trust for A, or in trust for a specific purpose, and should receive a conveyance of the reversion in the same land in his own right, or in trust for B, it could not be said the leasehold estate was merged because they would not vest in the same right.

In the present case if it can be said the state holds the easement to all the highways within its boundaries, which under our statutes cannot, we think, be upheld, still, if it does so hold, it is as the representative of the people, and in trust for the objects of their creation, viz., to enable the people to pass and repass over such roads at will, and such easements are not held in the same

right as the title of the state to lands which it has purchased.

To attempt to apply the doctrine of merger to such a case is to wrest it from the objects of its creation and existence. In strictness all public highways belong to the state, which holds them for public use, subject to legislative control. In this commonwealth their custody and control outside of municipalities is confided to the supervisors of the several counties in which they are located.

The legislature may by general statute legislate in reference to them. It has provided by section 2621 of the Political Code that "a road laid out and worked, and used as provided in this chapter shall not be vacated, or cease to be a highway, until so ordered by the board of supervisors of the county in which said road may be located." This statute is binding upon the state as well as individuals.

The general rule is that "whoever takes an estate upon which a servitude has been imposed holds it subject to the same servitude, and in the same manner as it was held by his grantor." (Washburn on Easements and Servitudes, 7.)

In *Flagg* v. *Flagg,* 16 Gray, 175, it was said that a private way established under a Massachusetts statute for the use of one or more individuals of a town, or proprietors therein, is not discontinued by the unity in one person of title to, and possession of, all the land through which the road is located.

The reasons for a like doctrine in case of a public highway in which the general public has an interest are even stronger. The objections to evidence are either untenable or relate to testimony which, upon the finding that the road in question was and is a public highway, are wholly unimportant.

The question of costs need not be considered, for the reasons:

1. The record fails to show any objection to costs, if any were allowed by the court, either before or after

judgment, and there is no bill of exceptions showing any ruling upon the question of costs.

2. While the court below found, as a conclusion of law, that the defendants were entitled to costs, the judgment does not include costs, and it may well be that defendants waived the recovery thereof.

The judgment and order appealed from should be affirmed.

VANCLIEF, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

McFARLAND, J., DE HAVEN, J., FITZGERALD, J.