[S. F. No. 20346. In Bank. Feb. 16, 1960.]

COUNTY OF MARIN, Petitioner, v. SUPERIOR COURT OF MARIN COUNTY, Respondent; MARIN MUNICIPAL WATER DISTRICT, Real Party in Interest.

634

Leland H. Jordan, County Counsel, for Petitioner.

Robert E. Reed, Harry S. Fenton, Robert F. Carlson and Kenneth G. Nellis as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Samuel W. Gardiner and Robert Elliott for Real Party in Interest.

WHITE, J.—County of Marin petitions for writs of prohibition and certiorari in an attempt to halt proceedings for the condemnation of two county roads brought in the respondent court by the Marin Municipal Water District. The Department of Public Works was granted permission to and did appear as amicus curiae in these proceedings.

Insofar as the factual background of this litigation is concerned, the record reveals that the Marin Municipal Water

District (hereinafter referred to as district), real party in interest herein, desires to build a dam and reservoir in aid of its program of development and conservation of the water resources within its jurisdiction. The site selected for the reservoir covers portions of two highways under the jurisdiction of petitioner Marin County. The county has a fee interest as to only a minute portion of the roads, holding easements as to the remainder. The roads, part of the federal-aid secondary system of California, were constructed and are maintained by both federal and state funds. After discovering that the aforesaid roads were to be inundated by its proposed project, district offered to relocate them. Dispute with the county over the terms of such relocation and the accompanying reconstruction caused district to file the eminent domain proceedings in an attempt to have the superior court resolve the conflict.

The county resisted the condemnation actions on the grounds that district has no statutory authority to take the roads. Motions by both parties for judgment on the pleadings were denied, but the court granted district's further motion for an order authorizing it to take immediate possession of the roads and to commence construction. The county thereupon initiated the instant proceedings. Both parties agree that prohibition and certiorari are appropriate remedies.

The power of eminent domain must arise expressly or by necessary implication from specific statutory authority. (*Southern Pac. R. Co. v. Southern Calif. R. Co.*, 111 Cal. 221, 227 [43 P. 602].) That power is conferred upon municipal water districts in the following language: "To have and exercise the right of eminent domain and in the manner provided by law for the condemnation of private property for public use, to take any property necessary to supply the district . . . with water. . . . In proceedings relative to the exercise of such right, the district shall have all of the rights, powers and privileges of a city. . . ." (Municipal Water District Act, Stats. 1951, ch. 62, p. 190, § 11(7).) Thus we see that the exercise of the power of eminent domain by district is limited to the manner and form of the exercise of such authority by a city.[1] Such procedure is set forth in the Code

---

[1] District also claims broad condemnation authority from section 19 of the Municipal Water District Act. (Stats. 1951, ch. 62, p. 198, § 19.) That enactment, however, only allows municipal water districts to construct their works along and across existing highways; it does not purport to grant the power of eminent domain. (See *State* v. *Marin Municipal Water District*, 17 Cal.2d 699, 703 [111 P.2d 651].)

of Civil Procedure, section 1240, which details the property that is subject to the power of eminent domain: "The private property which may be taken under this title includes. . . . 3. [*Property appropriated to public use.*] Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has already been appropriated. . . . But property appropriated to the use of any county, city and county, incorporated city or town, or municipal water district, may not be taken by any other county, city and county, incorporated city or town, or municipal water district, while such property is so appropriated and used for the public purposes for which it has been so appropriated. . . ." Section 1241 sets out the facts that must appear before condemnation will be allowed. As to property already appropriated to a public use, subsection 3 of section 1241 provides that "property appropriated to the use of any county . . . may not be taken by any . . . water district, while such property is so appropriated and used. . . ."

 County roads are clearly property appropriated to a public use. The condemnation of such property is, therefore, clearly governed by the provisions of the third subsections of sections 1240 and 1241, Code of Civil Procedure, quoted above. Under the last sentences of each of the said subsections it appears that the Legislature has decided to exempt from condemnation property previously appropriated and used by certain public entities, including counties. By express statutory provision property appropriated to the use of a county may not be taken by a municipal water district. A more clear or positive legislative mandate would be difficult to envision. District seeks to escape this conclusion by arguing that county roads are not, in fact, appropriated to the use of a county as is other county property but belong to the people of the entire state. Authority for this proposition is assertedly found in *People* v. *County of Marin,* 103 Cal. 223 [37 P. 203, 26 L.R.A. 659]. In that case the authorities at San Quentin State Prison attempted to close a county highway that ran through the prison grounds, alleging that as the state owned the fee in the roads, the highway easement merged with the fee and was extinguished. The court refused to allow the prison authorities to close the highway. It is herein argued that the holding of that case was that the easement was not merged with the fee because the highway easement was held as trustee for all the people of the state while the fee was held in a proprietary capacity. Thus, it is contended, highway ease-

ments are different kinds of property than, for example, buildings, in that roads are not appropriated to the use of any county but are held in trust for all the people of the state. An examination of the opinion in the cited case will readily disclose that no such conclusion was reached for no such question was involved.

What was held in that case was that "The authority to close up and alter public highways . . . is conferred upon the board of supervisors of the several counties of the state, and can only be exercised . . . in the mode prescribed by law. . . . No power is given . . . to the board of prison directors to abolish public highways." (*People* v. *County of Marin, supra,* 103 Cal. 223, 226-227.) Further, at page 232 the court states: "To attempt to apply the doctrine of merger to such a case is to wrest it from the objects of its creation and existence. In strictness all public highways belong to the state, which holds them for public use, subject to legislative control. In this commonwealth their custody and control . . . is confided to the supervisors of the several counties. . . . It has provided by section 2621 of the Political Code that 'a road . . . used as provided in this chapter shall not be vacated . . . until so ordered by the board of supervisors of the county in which said road may be located.' *This statute is binding upon the state as well as individuals.*" (Emphasis added.) The holding of the case was not, then, that there is a tortured distinction between different kinds of property but that the prison authorities had no legislative mandate to exercise the admitted power of the state over the road. We are impressed that the case would seem to give support to the position taken by petitioner county that the Legislature has committed to its care and discretion the full control over county highways despite an ultimate interest of the people of the entire state in those highways. In a real sense, therefore, the road was held to have been appropriated to the use of the county.

█ It is fundamental that all roads committed to the care of a county belong, ultimately, to all the people of the state. (*People* v. *County of Marin, supra,* 103 Cal. 223, 232; *San Francisco-Oakland Terminal Rys.* v. *County of Alameda,* 66 Cal.App. 77, 81 [225 P. 304].) █ By the same token *all* property under the care and control of a county is merely held in trust by the county for the people of the entire state.

█ The county is merely a political subdivision of state government, exercising only the powers of the state, granted by the state, created for the purpose of advancing "the policy

of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and expressly for the general administration of justice.'' (1 Dillon, Municipal Corporations, 5th ed., § 35, p. 64; 1 McQuillin, Municipal Corporations, 3d ed., § 2.46, pp. 495-500; *County of Los Angeles* v. *Riley*, 6 Cal.2d 625, 627 [59 P.2d 139, 106 A.L.R. 903]; *Singh* v. *Superior Court*, 44 Cal.App. 64, 66 [185 P. 985].) ▮▮▮ The county holds all its property, therefore, not just highway easements, as agent of the state. (*County of Los Angeles* v. *Graves*, 210 Cal. 21, 25 [290 P. 444]; *County of Tulare* v. *City of Dinuba*, 205 Cal. 111, 117 [270 P. 201]; *Reclamation District* v. *Superior Court*, 171 Cal. 672, 679-680 [154 P. 845]; *Board of Education* v. *Martin*, 92 Cal. 209, 215-216 [28 P. 799]; *Dillwood* v. *Riecks*, 42 Cal.App. 602, 607-608 [184 P. 35]; *United States* v. *Certain Parcels of Land*, 67 F.Supp. 780, 788; *City of Edwardsville* v. *Madison County*, 251 Ill. 265 [96 N.E. 238, 37 L.R.A. N.S. 101]; *Harris* v. *Board of Supervisors*, 105 Ill. 445, 451 [44 Am.Rep. 808].)

▮▮▮ The cases above cited are unanimous in holding that, *as against the state,* the county has no ultimate interest in the property under its care. In *Reclamation District* v. *Superior Court, supra,* 171 Cal. 672, 680, for example, the state was allowed to take land that had been used by a county for a courthouse, jail, hall of records, etc., without compensation on the theory that ''the county . . . is a mere political agency of the state . . . it holds its property on behalf of the state . . . it has no private proprietary interest in such property as against the state.''

▮▮▮ As to third parties, however, a different situation exists in that the county stands in the place of the state to the extent that the powers of the state have been delegated to it. For instance, in *County of Sierra* v. *Butler*, 136 Cal. 547 [69 P. 418], the county was allowed to sue to enjoin the defendant from leaving his debris on the highway against the defendant's claim that the state was the proper party to bring the action as the highway was only held in trust for the state by the county. The court said that as against third parties the county was given the authority to represent the state, and the state was bound by the result of the suit. (See also *County of Sutter* v. *Nicols*, 152 Cal. 688 [93 P. 872, 14 Ann.Cas. 900, 15 L.R.A. N.S. 616]; *County of Sterns* v. *St. Cloud, Mankato & Austin R. Co.*, 36 Minn. 425 [32 N.W. 91].)

While it is true that counties are charged with the acquisition, construction, maintenance and repair of the network of county highways within their boundaries, it is also true that they are charged with similar responsibilities relative to courthouses, jails, hospitals, and other properties used in the exercise of public functions intrusted to county care and management. For purposes of the administration of such functions all of the property used in the conduct thereof must necessarily be held to be appropriated to the use of the county, and this includes roadways which occupy no different category than other types of property.

From the foregoing, it manifestly follows that the highways sought to be condemned herein were thus appropriated to the use of petitioner county within the meaning of the legislative exemption from property subject to eminent domain as contained in sections 1240 and 1241, subdivisions 3, Code of Civil Procedure.

In an effort to avoid the effect of this statutory exemption district urges that since it proposes to relocate the roads, no "taking" within the meaning of sections 1240 and 1241, *supra*, is involved herein. For support in its contention district relies upon cases in which condemnation resulted in nothing more than a change in ownership of the property and improvements involved. (*City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 152 [287 P. 496]; *East Bay M. U. Dist.* v. *Railroad Com.*, 194 Cal. 603 [229 P. 949].) District's contention lacks substance here, where physical changes will of necessity occur in the premises if condemnation is successful. A taking is no less a taking because it is proposed to return an item of equal or greater value.

From what we have heretofore said it would appear that petitioner is entitled to the relief prayed for, and that discussion of its alternate contentions is unnecessary. However, due to the importance of, and the emphasis placed upon one of these questions, especially by amicus curiae, we are disposed to give it consideration.

As stated at the outset, the two highways herein involved are part of the federal-aid secondary system as defined in the Federal Highway Act. (23 U.S.C.A.) They were, therefore, constructed with federal as well as state funds. In order to qualify under the said act for federal assistance for its highway construction program the state Legislature enacted section 820, Streets and Highways Code, which reads: "The State of California assents to the provisions of the Federal Highway

Act, as amended and supplemented. All work done under the provisions of said act or other acts of Congress relative to federal aid, or other cooperative highway work . . . shall be performed as required under acts of Congress and the rules and regulations promulgated thereunder. Laws of this State inconsistent with such laws, or rules and regulations of the United States, shall not apply to such work, to the extent of such inconsistency. . . .'' (Reenacted by Stats. 1959, ch. 1908, p. 4479, § 1.)

Under the Federal Highway Act, all federal secondary aid system projects must be selected and planned by ''the State highway department and the appropriate local officials in co-operation with each other.'' (23 U.S.C.A., §§ 105, subd. b, 106, subd. b.) All projects are subject to the inspection and approval of the Secretary of Commerce before federal funds may be forthcoming. (23 U.S.C.A., § 118.) Specific substantive standards of construction must be met in all projects under the act. (23 U.S.C.A., § 109.) Acceptance of funds for a project carries with it a promise[2] to maintain the project in accordance with the standards of the Secretary of Commerce. (23 U.S.C.A., § 116.) Failure to so maintain a project constructed under the act will result in the withholding of funds from all projects in the state until compliance with the mandate of the secretary is brought about. (23 U.S.C.A., § 116, subd. c.)

In the light of these provisions and the specific assent thereto by the state Legislature[3] a serious question is presented as to whether condemnation of projects constructed under the federal act is at all possible or is totally inconsistent with the act. It appears clear that the Legislature has at least forbidden condemnation of such projects in the absence of some provision for their relocation and reconstruction. (See i.e., 23 U.S.C.A., § 116, *supra,* placing upon the state the duty to maintain all projects.)

In the case at bar, due to disagreement with petitioner county, it was the avowed purpose of the district in filing the within condemnation actions to have the superior court set out the terms of the proposed relocation. District

[2]Federal-state relations under the highway program amount to a contract between the parties. (*Bogart* v. *Westchester County,* 185 Misc. 561 [57 N.Y.S.2d 506, 513].)

[3]For the construction of a statute similar to section 820, Streets and Highways Code, see *Logan* v. *Matthews,* 330 Mo. 1213 [52 S.W.2d 989].

asserts that authority for such power in the superior court is found in section 1247a, Code of Civil Procedure, which provides: "The court shall also have power to regulate and determine the place and manner of removing or relocating structures or improvements, or of enjoying the common use mentioned in subdivision 3 of Section 1240." Though it be conceded that the provision just mentioned does authorize the trial court, generally, to adopt a plan for the relocation of property appropriated to a public use by a public agency, nevertheless, it is equally manifest, under the provisions of the aforesaid federal act, enacted as the law of this state, that the real party in interest herein and the superior court are precluded from selecting projects and adopting specifications therefor as is threatened in the case at bar. Those tasks, along with the actual construction of all projects are specifically entrusted to the state highway department and the appropriate local highway officials, subject only to approval by the United States Secretary of Commerce. (23 U.S.C.A., §§ 105, subd. b, 106, subd. b, 114.) What we have just said would appear to be an added reason why prohibition should issue herein, to prevent the court below from assuming functions which by law are entrusted to other agencies of government.

What has been set forth herein has not been stated without regard to the magnitude and complexity of the water problems with which California is confronted. However, it would appear from the statutes adopted that the Legislature, though fully cognizant of the ever present water problems, nevertheless intended by such legislation to invite the continued flow of federal highway funds into California to meet an equally serious problem.

The Legislature may well have had in mind that, in the past, pressing water problems have been dealt with by it in such a manner as to preserve the integrity of the general exemption from condemnation given to property previously put to a public use. See, for example, the provision for relocation of State Route 5 by the state highway department to run clear of the proposed reservoir of the Santa Clara Valley Water Conservation District. (Stats. 1947, ch. 19, p. 3824.) On the other hand, the Legislature may, if it wishes, abolish the exemption from condemnation given to property appropriated to a public use. Until such time, however, we must abide by the law as we now find it.

For the foregoing reasons the order of the respondent court granting the district immediate possession of the disputed

premises is annulled. It is further ordered that a peremptory writ of prohibition issue enjoining the respondent court from taking any further proceedings against petitioner County of Marin in those certain actions entitled *Marin Municipal Water District* v. *Crocker-Anglo National Bank et al.* (No. 29829) and *Marin Municipal Water District* v. *Albert Dolcini et al.* (No. 29830) other than to dismiss the same.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and Peters, J., concurred.