Melvin A. KNIGHT, Plaintiff,

v.

Ernest CARLSON, Gary Bastion, John Rigsby, Steven Caballero, Arthur Pirtle and County of El Dorado, Defendants.

Civ. No. S-74-129 LKK.

United States District Court,
E. D. California.

Oct. 12, 1979.

Peter H. Smurr, Carmichael, Cal., for plaintiff.

J. Douglas Van Sant, Kroloff, Belcher, Smart, Perry & Christopherson, Stockton, Cal., for defendants.

## MEMORANDUM

KARLTON, District Judge.

Plaintiff Knight has brought this action pursuant to 42 U.S.C. § 1983 naming the County of El Dorado and several employees of the Sheriff's Department for injuries allegedly sustained during his arrest. Pursuant to a pretrial conference presided over by the Honorable Thomas MacBride, the parties were ordered to brief two disputed

questions of law central to the trial of the case:

1. Whether California counties are liable under Section 1983;

2. If so, the nature and extent of the evidence of "custom" required to render the county liable for the alleged violation of plaintiff's rights.

## I. CALIFORNIA COUNTY LIABILITY FOR SECTION 1983 VIOLATIONS.

■ The Civil Rights Act provides in pertinent part "Every *person* who, under color of any . . . custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable . .". 42 U.S.C. § 1983. Thus by its terms, liability under the statute is limited to tortfeasors who are "persons" within the meaning of the statute.

Further limitations on liability arise out of the Eleventh Amendment: "The Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States by Citizens of another State. . . ." Since at least 1899, the Eleventh Amendment has been construed to deprive the federal courts of jurisdiction over unconsented to suits against a state by one of its own citizens. *Fitts v. McGhee* (1899) 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535.

In *Monell v. New York Department of Social Services* (1978) 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, the Supreme Court overruling a line of cases arising from *Monroe v. Pape* (1961) 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, held that local governments are "persons" for purposes of section 1983. The Court noted, however, that "Our holding today is, of course, limited to local government units which are not considered

part of the State for Eleventh Amendment purposes." 436 U.S. at 690, n.54, 98 S.Ct. at 2035.

Defendant County of El Dorado argues that California counties are subdivisions of the state and thus immune under the Eleventh Amendment from Section 1983 actions. It therefore becomes necessary to resolve the issue of whether the county is a ". . . part of the State for Eleventh Amendment purposes." In *Edelman v. Jordan* (1974) 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, the United States Supreme Court construed the applicability of the Eleventh Amendment to counties finding that ". . . a county does not occupy the same position as a State for purposes of the Eleventh Amendment." 415 U.S. at 667, n.12, 94 S.Ct. at 1358. The Court cited for this proposition *Moor v. County of Alameda* (1973) 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596, a case involving a California county.

In *Moor, supra,* the Court recognized that California counties possessed a dual character. It thus determined that, unlike states, they are subject to suit as "citizens" for diversity purposes.[1]

After a comprehensive review of the California law governing counties, the Court stated:

"The County in this case contends, however, that unlike the counties of most States, it is not a municipal corporation or an otherwise independent political subdivision, but that it is, under California law, nothing more than an agent or a mere arm of the State itself.

. . . . .

Despite the County's contentions, a detailed examination of the relevant provisions of California law—beyond simply the generalization contained in Art. 11, § 1, of the state constitution—convinces us that the County cannot be deemed a mere agent of the State of California.

---

1. *Moor* preceded the decision in *Monell, supra,* and adhered to the holding in *Monroe v. Pape* that counties were not "persons" under Section 1983. *Moor's* decision turned on the classification of county as a "municipality" rather than on any special status of counties as urged by defendant. Thus, to the extent *Monell* rejected the notion that local governments are not "persons" under Section 1983, the holding of *Moor* that counties are not liable has also been rejected.

Most notably, under California law a county is given 'corporate powers' and is designated a 'body corporate and politic.' In this capacity, a county may sue and be sued, and, significantly for purposes of suit, it is deemed to be a 'local public entity' in contrast to the State and state agencies.

.     .     .     .     .

In sum, these provisions strike us as persuasive indicia of the independent status occupied by California counties relative to the State of California." 411 U.S. 693 at 718–720, 93 S.Ct. at 1800–1801.

Thus it appears that *Edelman's* construction of *Moor* settles the issue—California counties are amenable to suit under 42 U.S.C. § 1983.

In the absence of the Supreme Court's determination, this court would be required to look to the law of the state to determine the applicability of the Eleventh Amendment. *Ford Motor Co. v. Department of Treasury of the State of Indiana, et al.* (1945) 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389. An examination of California law leads inevitably to the same result—counties are not merely extensions of the state for purposes of the Eleventh Amendment.

The California Supreme Court has not directly discussed Eleventh Amendment immunity as it relates to county defendants in § 1983 actions subsequent to *Monell, supra.* Nonetheless, California law on the amenability of counties to suit clearly indicates the result.

Prior to 1971 a line of California cases had held that counties were immune from suit as political subdivisions of the state. See e. g. *County of Marin v. Superior Court* (1960) 53 Cal.2d 633, 2 Cal.Rptr. 758, 349 P.2d 526; *County of Los Angeles v. Riley* (1936) 6 Cal.2d 625, 59 P.2d 139. In *People ex rel. Younger v. County of El Dorado*

(1971) 5 Cal.3d 480, 96 Cal.Rptr. 553, 487 P.2d 1193, the California Supreme Court reanalyzed the problem and determined that a county possessed a sufficiently dual character so as to render it amenable to suit. In *Younger, supra,* the petitioner had sought a writ of mandate against the county to compel it to pay certain sums to the Tahoe Regional Planning Agency. Relying upon cases like *County of Marin v. Superior Court, supra,* the county asserted it was not amenable to suit. The court permitted the writ to issue stating:

"While it has been said that counties are not municipal corporations but are political subdivisions of the state for purposes of government (citations omitted), counties have also been declared public corporations or quasi-corporations. (citations omitted.) In view of Government Code section 23003, which provides that a county is 'a body corporate and public,' and section 23004, subdivision (a) of the same code, which states that counties may sue and be sued, we think that a county is sufficiently corporate in character to justify the issuance of a writ of mandate to it." 5 Cal.3d at 491, n.12, 96 Cal.Rptr. at 559, 487 P.2d at 1199.

In *Moor, supra* and *Edelman, supra,* the United States Supreme Court determined that California counties are not immune from the jurisdiction of the federal courts. The California Supreme Court has also held that for purposes of suit the counties are more than an extension of the state. As such they are not "local government units which are considered part of the state for Eleventh Amendment purposes." Therefore the Court finds that California counties in general, and El Dorado County in particular, are among the local governmental agencies considered "persons" for purposes of Section 1983 actions.[2]

---

2. The only post *Monell* California case that this Court has been able to find on the subject is *Toscano v. County of Los Angeles* (1979) 92 Cal.App.3d 775, 155 Cal.Rptr. 146. In that case, in which plaintiffs were pro per, the Court states as follows "However, United States Code Section 1983 actions can only be brought against individuals. (*Moor v. County of Alameda* (balance of citation omitted); *Mon-* roe v. Pape (1961) 365 U.S. 167 (balance of citation omitted)." Inasmuch as plaintiffs were in pro per, it is not altogether surprising that the Court was not advised of the present state of the law. Apparently the Court did no independent research, and thus did not discover that *Monroe* had been specifically overruled on that point, and thus *Moor's* adherence to *Monroe* rejected.

## 58

## II. PROOF OF GOVERNMENTAL CUSTOM.

In this case plaintiff admits that there is no specific ". . . ordinance [or] regulation" under which he seeks to impose liability on the county. On the contrary, he seeks to impose liability for injury imposed under color of the county's alleged "custom [or] usage."

Defendant argues that in order to hold the county liable under *Monell, supra,* the Board of Supervisors must be aware of the acts alleged, and must have at least adopted the practice *sub silentio.* This does not appear to be the law.

■ Under *Monell, supra,* liability arises where the wrong was suffered under color of custom whether or not such custom is embodied in written law or regulation.

"Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, [1613], 26 L.Ed.2d 142 (1970): 'Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a "custom or usage" with the force of law.'" 436 U.S. 690, 98 S.Ct. 2036.

The Court specifically held that a county was not responsible by virtue of respondeat superior. 436 U.S. at 694, 98 S.Ct. 2018. On the other hand, the Court also specifically held ". . . when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694, 98 S.Ct. at 2038.

The Supreme Court recognized the complex question of the scope of municipal liability for custom. "We have attempted only to sketch so much of the § 1983 cause of action against a local government as is apparent from the history of the 1871 Act and our prior cases, and we expressly leave further development of this action to another day." Id. at 695, 98 S.Ct. at 2038. Neither counsel, nor the court's independent research has revealed any Ninth Circuit case which further defines the term "custom" in this context.

It appears clear that the plaintiff must show more than independent acts of tortfeasors employed by the defendant County's Sheriff's department, since, as noted, the Supreme Court has specifically rejected the notion of municipal liability arising under the doctrine of respondeat superior. 436 U.S. at 694, 98 S.Ct. 2018. The word "custom" at least encompasses "widespread discriminatory practices of state officials . . . [which are] permanent and well settled . . . ." *Adickes v. S. H. Kress & Co., supra.* Custom appears to require settled governmental practice or "Deeply embedded traditional ways of carrying out [county] policy". (*Nashville, Chattanooga and St. Louis Railway v. Browning* (1940) 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254.) One of the more useful explanations of custom and usage, albeit in another context is found in *U. S. etc. v. Guy H. James Construction Co.* (D.C.M.D.Tenn.1972) 390 F.Supp. 1193 "'Usage' is a repetition of acts, and differs from 'custom' in that the latter is the law or general rule which arises from such repetition; while there may be usage without custom, there cannot be cus-

tom without a usage accompanying or preceding it." 390 F.Supp. at 1209.[3]

## SUMMARY

Thus the Court finds that California counties are amenable to suit under 42 U.S.C. § 1983. They may not be held liable under respondeat superior for the acts of their employees. They may be held liable where their employees are untrained by virtue of County policy. They may be liable for acts done in pursuance of state law, ordinance, or regulation, and may be liable for acts occasioned by the tortious conduct of their employees pursuant to a county's custom or usage. "Custom" is the deeply imbedded traditional way of carrying out county policy. "Usage" is the regular and repeated response to a situation.

---

3. Of course even an individual act of brutality by a county employee is a basis for municipal liability where it arises from a municipal policy of inadequate training "so grossly negligent as to constitute 'deliberate indifference.'" *Owens v. Hass* (2nd Cir. 1979) 601 F.2d 1242, 1247.