Mary C. GUY, Individually, Mary C. Guy, Administratrix for the estate of Melody C. Guy, Luciana Guy, Petite M. Guy, Mary C. Guy, Guardian for Sharon Renee Abernathy, minor, Elisha Abernathy, minor, Plaintiffs,

v.

STATE of Delaware, Department of Natural Resources and Environmental Control, Clifford C. Ennis, Mary F. Ennis, and George Wilson, Jr.,

v.

Clifford C. ENNIS, Mary F. Ennis and George Wilson, Jr., Defendants.

Superior Court of Delaware,
Kent County.

Submitted Nov. 10, 1981.

Decided Nov. 23, 1981.

John Terence Jaywork, of Hudson, Jones & Jaywork, Dover, for plaintiffs.

Harry H. Rhodes, III, of Brown, Shiels & Chasanov, Dover, for defendants Clifford C. and Mary F. Ennis.

## OPINION

TEASE, Judge.

Defendants Clifford and Mary Ennis move for summary judgment in this action for injuries received in an automobile accident.

On July 27, 1977, the Ennises conveyed to the State of Delaware, through the Department of Natural Resources and Environmental Control (DNREC), a parcel of farmland located on the northeast corner of the intersection of Routes 9 and 6 in Kent County. The farm was conveyed subject to easements of record; one of these, a so-called "daylighting" easement, had been deeded to the State of Delaware, through the Highway Department, in June of 1956. The easement required the Ennises not to obstruct the clear view over the land at the intersection of Routes 9 and 6.

The deed to the State set out several "reservations" in the Ennises, i. e., the right to reside in the farmhouse and use all outbuildings for the remainder of their lives, exclusive trapping rights, the use of one goose blind site, and the right to grow corn or soybeans on all tillable acres. The option agreement from Ennis to the State, which preceded the sale, contained the same terms as the deed which followed it.

On August 28, 1977, one month after the sale to the State, plaintiffs' vehicle collided with a vehicle driven by defendant Deborah Coverdale, who had failed to stop at a stop sign at the intersection of Routes 9 and 6. Plaintiffs contend that the accident could have been avoided, or the impact and resulting injuries greatly lessened, had their view at the northeast corner of the intersection not been obstructed by tall growths of corn and other vegetation. The farmland had been planted in corn by defendant George Wilson pursuant to an oral agreement between the Ennises and Wilson.

Plaintiffs' theories of recovery are that the Ennises, by causing or allowing the clear view at the intersection to be obstructed, (1) breached the covenants set out in the "daylighting" easement (Count I), (2) negligently breached a duty to persons travelling lawfully upon the highway (Count II), and (3) created or maintained a public nuisance (Count V). The Ennises move for summary judgment on all three theories of recovery.

As to Count I, the Ennises assert that they could have no liability under the easement agreement because the easement was a nullity after the farm's transfer to the State, or, if still in existence, it had been assigned to the State, thereby relieving the Ennises of all responsibility for keeping the land unobstructed.

██ The Ennises suggest three theories by which the easement may be considered a nullity. First, they argue that when the State, as owner of the dominant estate (the fee in the roadway), purchased the servient estate (the farm) the easement appurtenant was extinguished by merger. Clearly, this is the general rule. *Edgell v. Divver*, Del. Ch., 402 A.2d 395, 397 (1979); 25 Am.Jur.2d Easements and Licenses § 108 (1966).

Plaintiffs, however, contend that this case comes within an exception to the merger doctrine, which states that there is no merger absent unity of ownership and possession and enjoyment of the dominant and servient estates. *Witman v. Stichter*, Pa.Supr., 299 Pa. 484, 149 A. 725, 727 (1930);

*Restatement of Property* § 497 (1944); 25 *Am.Jur.2d*, Easements and Licenses § 108 (1966). Plaintiffs point out that the fee in the roadbed is owned by the Department of Transportation (DOT), successor to the Highway Department, and the fee in the farm by the DNREC. Further, these two state agencies hold title for different purposes—for highway purposes and for environmental purposes, respectively. Therefore, Plaintiffs argue, there was no unity of ownership and no merger of estates.

◼ Plaintiffs find support for this contention in two California cases, *People v. Marin County*, Cal.Supr., 103 Cal.App. 223, 37 P. 203 (1894) and *County of Marin v. Superior Court*, Dist.Ct.App., 344 P.2d 95 (1959). However, the California Supreme Court, in reversing the latter case, *County of Marin v. Superior Court*, Cal.Supr., 53 Cal.2d 633, 2 Cal.Rptr. 758, 349 P.2d 526 (1960), discussed the holding of the lower court and indicated that the language plaintiffs rely on was not essential to that decision. *Id.* 2 Cal.Rptr. at 761, 349 P.2d at 529. See also 35 *A.L.R.3d* 1355 (1971). This attack on unity of ownership must fail; legal title to both estates is vested in the State, for the good of its citizens, and the fact of administration or supervision by different agencies of the State can not destroy that unity.

◼ Plaintiffs do, however, raise a contention fatal to extinguishment by merger. The deed to the state "reserved" certain life interests to the Ennises which left them in possession and control of the land as they had been prior to the sale. Their rights to reside on the farm, use all out-buildings, and till all tillable acreage, are exclusive of the State's rights, as fee owner, to possess and enjoy the land. The doctrine of merger does not operate where the fee in the servient estate is subject to an outstanding estate in possession. *Witt v. Reavis*, Ore. Supr., 284 Or. 503, 587 P.2d 1005, 1008 (1978); *Restatement of Property* § 497 (1944); 28 *C.J.S.*, Easements § 57(b) (1941).

Since the Ennises never parted with possession of the farm it is not important, as the Ennises argue it is, whether their rights

of possession, tillage, etc., were created in the deed by "reservation" or by "exception." The distinction between the two terms has long been blurred by inexact usage. *Emmons v. D. A. Schulte, Inc.*, Del. Ch., 120 A. 221 (1923), quoting Lord Coke, Co. Little 143(a) (1842); see also *Bigelow and Madden*, Exception and Reservation of Easements, 38 *Harv.L.Rev.* 180, 181 (Dec. 1924). The important fact is that the State never had the unqualified right to possession and enjoyment—the right to enter upon the land and treat it in a manner consistent with full ownership of the fee.

◼ The Ennises then argue that the easement is a nullity because it had been released by agreement with the State. This contention rests upon two circumstances. First, the easement was "excepted" from the rights to be transferred under the 90-day option agreement, but was not mentioned in the deed. However, the option agreement did no more than give the state notice that the easement existed as an encumbrance on title. Where the servient estate is purchased with notice of an easement, the purchaser takes title subject to the easement. 25 *Am.Jur.2d*, Easements and Licenses §§ 97–98 (1966); 28 *C.J.S.*, Easements § 47–48 (1941); 3 *Tiffany Real Property* § 828 (1939). Second, the Ennises argue that the deed reserves to them the right "to till *all* tillable acres of the farm." (emphasis added). Extinguishment by release requires an express writing, *Restatement of Property* §§ 500–501 (1944); 28 *C.J.S.*, Easements § 61(a) (1941); 3 *Tiffany Real Property* § 824 (1939). The Ennises contend that the language of the deed permitting them to till *all* tillable acreage releases the easement and allows the planting of corn on the northeast corner of the intersection. This is, indeed, a strained construction; and in any case the use of the single word "all" does not amount to an express writing. As the Ennises themselves point out, the easement is not mentioned in the deed. It could not, therefore, have been expressly released by the State.

The Ennises' third, and final, contention that the easement was a nullity rests on the lack of a specific description of the size and location of the easement. This argument fails for either of two reasons. First, Delaware has endorsed the rule of definiteness, which states that:

> Generally, however, a written description suffices . . . if it is sufficiently definite, with the aid of extrinsic evidence, to identify the land sought to be described. 3 *Tiffany, Real Property*, § 997 (1939).

See, for example, *Hanby v. Wereschak*, Del. Supr., 207 A.2d 369 (1965). This rule of construction is applied to prevent an easement from being void *ab initio*. There has been no extrinsic evidence presented (and summary judgment is not appropriate where, as the *Hanby* case noted, the introduction of evidence is proper) to allow the easement to be precisely located and its extent defined. Second, the issue under consideration is whether the easement exists, and not its precise dimension. Size and location are, therefore, collateral questions that need not be decided, there being no disagreement that the easement affected the northeast corner of the intersection of Routes 9 and 6, and that corn grew right up to the shoulder of the road as if there were no easement. Cf. *People v. Marin County*, Cal.Supr., *supra* 205–6.

The Ennises argue in the alternative that should the easement have vitality, as it does, then they were not responsible for maintaining it because it had been assigned to the State. While this is true, the Ennises are nonetheless bound by the covenant or promise made in 1956 not to obstruct the clear view while they were fee owners. The Ennises stand in the position of successors in interest to the promise contained in the easement by reason of their continued possession of the land. *Restatement of Property* § 530 and comment (b) (1944). The easement creates a promise that the parties intended would run with the land by its express language ("for themselves, their heirs and assigns"). The Ennises may not now disclaim the burden of the promise they made. See generally, *Restatement of Property* §§ 530–535, § 547

and comment (c) (1944); *Clear Lake Apts. v. Clear Lake Utilities*, Tex.Civ.App., 537 S.W.2d 48 (1976); *Huff v. Duncan*, Ore. Supr., 263 Or. 408, 502 P.2d 584 (1972).

For all of the above reasons, the Ennises' motion for summary judgment as to Count I of the complaint is denied.

The Ennises also move for summary judgment as to Count II of the Complaint, which alleges negligent or intentional interference with the safety of travelers upon the roadway.

The Ennises contend first that they are not liable as a matter of law for any negligent act or omission because they were not the possessors of the land. The farmland abutting the intersection had been planted in corn by Defendant George Wilson pursuant to an oral agreement with the Ennises. Wilson had agreed to share expenses, use certain materials supplied by the Ennises, and furnish necessary machinery. The crop was to be shared equally between Wilson and the Ennises. Wilson now characterizes the agreement as a "share crop" arrangement; the Ennises term it a "lease".

These facts are similar to the situation in *Currey v. Davis*, Del.Supr., 1 Houst. (6 Del.) 598 (1858). In that case, the court held that the relationship created was "landowner and cropper" because nothing had been said about a "lease" or rental payments, but only sharing expenses and sharing the crop. *Id.* at 602. See also, Annot., 94 *A.L.R.3d* 1013 (1979). Later declarations of parties did not control construction of the agreement. *Id.* at 603. The differing characterizations of the agreement by Wilson and by the Ennises raises a material issue of fact. Furthermore, viewing the facts in the light most favorable to plaintiffs, *Wilson v. Tweed*, Del.Supr., 209 A.2d 899 (1965), would result in the conclusion that the agreement was not a lease, and that the Ennises therefore remained in possession.

The Ennises also question whether they may be held to have interfered with the safety of travelers when they in no way physically obstructed passage on the roadway.

The *Restatement (Second) of Torts* § 371 (1965) extends liability of the possessor of land for physical harm to persons not on the land to include activities carried on entirely on the possessor's land. Whether the Ennises and/or Wilson realized or should have realized that planting corn up to the shoulder of the road would involve an unreasonable risk of harm to persons upon the highway is a question of fact. Furthermore, it is rare that questions of negligence may be determined by way of summary judgment; and the same is true in this case as to the issues raised concerning causation. *Caine v. New Castle County*, Del.Supr., 379 A.2d 1112, 1116 (1977); *Watson v. Shellhorn Hill, Inc.*, Del.Supr., 221 A.2d 506, 510 (1966).

Finally, the fact that the accident may have been proximately caused by the negligence of Defendant Deborah Coverdale, driver of the vehicle which disregarded a stop sign, does not preclude plaintiffs' cause of action against the Ennises. It is "well established" that there may be more than one negligent act or omission that is the proximate cause of injuries. *Sweetman v. Strescon Industries, Inc.*, Del. Super., 389 A.2d 1319, 1323 (1978). Whether there was a duty and a causal link between that duty and the injuries sustained is properly determined by a jury. See *Kuyper v. Gulf Oil Corp.*, Del.Supr., 410 A.2d 164 (1979).

The Ennises' motion for summary judgment as to Count II is therefore denied.

The Ennises also move for summary judgment as· to Count V of the complaint, contending that they have committed no act that could constitute a nuisance.

Plaintiffs rely upon a specific statute defining a public nuisance as a criminal offense, 17 *Del.C.* § 503, which states in part:

> Whoever encroaches upon, or obstructs or commits any nuisance in, a public road . . . shall be fined. . .

A criminal statute that declares particular conduct to be a public nuisance sets the standard of conduct for a tort action based on nuisance. *Restatement (Second) of Torts* § 821B, comment (e) (1965). A citizen who receives a special harm, different in kind from any resulting to the general public, may maintain the action in tort. Personal injury is such a special harm. *Restatement (Second) of Torts* § 821C(1) and comment (d) (1965); 39 *Am.Jur.2d*, Highways, Streets, and Bridges §§ 311, 339 (1968).

Therefore, the Ennises may be liable for creating or maintaining a public nuisance only if the act of growing corn on land that, by the easement agreement, was to be clear and unobstructed, can be considered an encroachment or obstruction in a public road under § 503. Stated another way, the issue is whether a "public road" includes an easement appurtenant to the road.

Plaintiffs argue that 17 *Del.C.* § 101(a)(6) by its terms makes the easement a part of the road. Section 101 states in pertinent part:

> (a) As used in this title, unless the context indicates a different intent:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (6) "Road" and "highway" include any public way or road or portion thereof and any sewer, drain or drainage system connected therewith and any bridge, culvert, viaduct or other construction or artificial way used in connection therewith and anything which is accessory to any of the same or to the use thereof.

The context of § 503 does not indicate a contrary intent, and "public road" must be construed to include a "daylight" easement as being in the category of "anything which is accessory to any of the same or to the use thereof." The easement at the intersection had no purpose other than its relationship as appurtenant to, and for the use of, the road. The language of the easement agreement itself makes this relationship quite clear.

The Ennises' motion as to Count V of the complaint is also denied.