**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LOREN MITCHELL
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted:  March 12, 2025
Date Decided:  July 3, 2025

Albert E. Muchille
P.O. Box 325
Townsend, DE 19734

Peter K. Schaeffer, Jr., Esquire
Avenue Law
1073 S. Governors Avenue
Dover, DE 19904

RE:   *Albert E. Muchille v. Chase A. Bechtol*,
C.A. No. 2023-0869-LM

Dear Counsel and Parties:

Albert E. Muchille and Chase A. Bechtol are neighbors that came before me on March 12, 2025, disputing the use of an access easement. The neighbors in this case have been engaged in conflict revolving around a shared driveway for more than five years. After taking the matter under advisement, I now present this final report resolving the issues presented on the nature of the easement and whether there is reason to believe it has been terminated or extinguished.

## I.     FACTUAL BACKGROUND[1]

The following facts are drawn from the testimony and exhibits presented at trial.

Albert E. Muchille, pro se Plaintiff, and Chase A. Bechtol, Defendant, have been neighbors, living in Dover, Delaware, since Mr. Bechtol purchased his property on October 18, 2014.[2] Mr. Muchille purchased his property on January 30, 2008.[3] The parties' properties sit side by side with a driveway, the subject of issue here, that sits primarily on Mr. Muchille's property and provides Mr. Bechtol a means of ingress and egress from the public road, Kenton Road, onto his property.[4] The driveway at issue is not Mr. Bechtol's only means of access to his property as there

---

[1] The facts in this report reflect my findings based on the record developed at trial on March 12, 2025. I grant the evidence the weight and credibility I find it deserves. Citations to the record are in the form of Docket Item ("D.I.") and identified by their entry number. Citations to the trial transcript are in the form of "Tr. __." Both parties submitted separate exhibit binders at trial. Citations to Defendant's exhibits will be in the form of "DX__". At trial some confusion arose as to the labeling of Mr. Muchille's exhibits that he presented at trial due to each binder given to the Court in advance of trial being mislabeled. Herein, I will identify Plaintiff's relevant exhibits specifically by document title or description.

[2] DX A; DX B. The parties stipulated to the admission of the properties' respective deeds. D.I. 31. Plaintiff's exhibit binders contained the first page of each deed identifying the properties by instrument numbers 2008-114491 in connection with Plaintiff's property deed and 2014-264848 in connection with Defendant's property deed. For the sake of clarity hereon these deeds will be cited to as the Defendant's exhibit label, but I find it prudent to note that both parties have agreed to admit these documents at trial.

[3] DX A.

[4] DX C.

is another driveway that provides for direct access from Kenton Road that sits entirely on Mr. Bechtol's parcel.[5] The driveway at issue sits upon what is recorded to be a 50 foot right of way on Mr. Muchille's property.[6]

The deed which transfers Plaintiffs property from Harrington Commercial, LLC to Mr. Muchille was recorded on January 31, 2008, and therein contains a provision that subjects the property to the 50 foot right of way "reserved for the benefit of the party of the first part and his heirs, successors, and assigns, including but not limited to, Jennifer G. Casey."[7] The deed for Plaintiff's property further describes the right of way to be "separating the lands retained by Grantor from the lands previously conveyed by the Grantor to others…," and describes that on the right of way sits "a stone driveway sufficient to provide ingress and egress to the party of the first part."[8] The deed transferring Mr. Bechtol's property to him, recorded on November 6, 2014, identifies the property to be "with a 50 feet Right of Way as shown on the above mentioned record plan…," and also identifies the deed to be subject to the deed which transferred the property unto Jennifer G. Casey.[9]

---

[5] DX C.

[6] DX A at 3; DX B at 3; DX C.

[7] DX A at 3.

[8] *Id.*

[9] DX B at 3.

The parties have been in various disputes since they have become neighbors in 2014. Plaintiff believes the Defendant engaged in conduct that caused damage to his vehicle.[10] This event was the subject of a separate action brought in the Delaware Justice of the Peace Court that was dismissed with prejudice.[11] Plaintiff also erected a fence on his property with a gate across the right of way area that for a brief period blocked the Defendant's use of the right of way. [12]The gate that blocked the Defendant's access had been taken down as of the time of trial.[13] The Defendant testified that the fence interferes with his use and enjoyment of the easement because it effects his ability to care for his lawn.[14] The fence borders Mr. Muchille's property and sits approximately six to eight inches from Mr. Bechtol's fence.[15]

The action before this Court is one of four cases brought against Mr. Bechtol by Mr. Muchille dealing with various disputes relating to the parties' relationship as neighbors, the present action before this Court being the only one that brought the

---

[10] Tr. 8:5–15.

[11] Tr. 20:24–21:7; *See Muchille v. Bechtol*, JP16-22-007277 (Del. J.P. Feb. 1, 2023).

[12] Tr. 39:14–23.

[13] *Id.*

[14] Tr. 40:2–13.

[15] Tr. 39:14–23.

parties into court for trial.[16] The other three cases are made up of two actions in the Delaware Justice of the Peace Court, one of which, case number JP16-22-003458, was closed after the court entered an order of judgment in favor of the Defendant on November 4, 2022,[17] and the other, case number JP16-22-007277, the court issued an order of dismissal with prejudice on February 1, 2023.[18] The third was a case in the Delaware Court of Common Pleas, case number CPU5-23-000604, filed by Plaintiff under the Negligence Property Act, and was dismissed on February 23, 2024.[19]

Plaintiff filed the complaint here on August 24, 2023, claiming trespass on the basis that the Defendant no longer had any right to use the driveway on Plaintiff's Property as a means of access to his own property because of the additional driveway that had been constructed on the Defendant's Property.[20] On September 20, 2023, the Defendant filed his answer and counterclaims, asserting the affirmative defenses of failure to state a claim for relief, unclean hands, laches, and claims barred by the

---

[16] Tr. 40:18–41:2.

[17] *Muchille v. Bechtol*, JP 16-22-003458 (Del. J.P. Nov. 4, 2022).

[18] *Muchille v. Bechtol*, JP16-22-007277 (Del. J.P. Feb. 1, 2023); Tr. 20:24–21:7.

[19] *Muchille v. Bechtol*, CPU5-23-000604 (Del. Com. Pl. Feb. 23, 2024).

[20] D.I. 1.

statute of limitations.[21] The Defendant asserted counterclaims for quiet title in the easement on Plaintiff's property and requests statutory and bad faith fee shifting, and injunctive relief in the form of Plaintiff's removal of any barriers to access to the Defendant's property through the easement and to prevent any future behavior on the part of the Plaintiff that could hinder the Defendant's use and enjoyment of the easement.[22]

On November 1, 2023, the Defendant filed a motion for default judgment for Plaintiff's failure to respond to the Defendant's counterclaims filed on September 20, 2023.[23] Plaintiff subsequently answered the Defendant's counterclaims and answered the Defendant's motion for default judgment on November 13, 2023.[24] The Defendant then moved for summary judgment on December 1, 2023.[25] Due to an automatic stay from the Bankruptcy Court issued on December 22, 2023 that was then lifted on February 1, 2024, the Court granted the Plaintiff an extension to respond to the Defendant's motion for summary judgment.[26] The Plaintiff answered

---

[21] D.I. 5.

[22] *Id.*

[23] D.I. 7.

[24] D.I. 8; D.I 11.

[25] D.I. 14.

[26] D.I. 17-19; D.I. 22.

the motion for summary judgment on March 28, 2024,[27] and the Defendant waived

his reply on March 29, 2024.[28] The Court denied the Defendant's motion for

summary judgment on July 30, 2024, and therein interpreted Plaintiff's claims for

"trespassing and damages to the driveway in the amount of $300,000" to be one for

injunctive relief against the Defendant.[29]

After a one-day trial was held on March 12, 2025, in which the only witnesses

were the parties themselves, I took this matter under advisement.[30] What follows is

the reasoning behind my finding in favor of the Defendant.

## II.    ANALYSIS

As noted in the introduction and background, this case deals with an easement.

At its heart, the parties want to know what their rights are regarding the disputed

land. The parties agree on the existence of the subject easement but disagree on

whether the easement remains enforceable today. To answer this question, I find it

necessary to first properly identify the category of easement at issue in this case.

---

[27] D.I. 23.

[28] D.I. 24; D.I. 25.

[29] D.I. 26 at ¶B.

[30] D.I. 34.

The issue of enforceability hinges on whether this is an express easement, or an easement implied by necessity. Plaintiff argues the easement has been extinguished due to the construction of another means of access to the Defendant's property, which is a valid argument for termination, but only if the easement at issue qualifies as an implied easement by necessity.[31] Defendant argues that the easement is an express easement and remains enforceable and unable to be terminated because there is now an alternative and direct means of access to the Defendant's property.[32] For reasons I will explain further below, I find the easement is an express easement and the easement has not been terminated through the construction of additional direct means of access.

### A. The easement is an express easement, not an implied easement by necessity.

"An easement is a non-possessory interest in real property, granted for a particular purpose, enforceable of right and not depend[e]nt for its continued existence on the will of the grantor."[33] "An easement may be created in any of several

---

[31] *See* D.I. 1; Tr. 13:8–21; *Pencader Assoc., Inc. v. Glasgow Trust*, 446 A.2d 1097, 1100 (Del. 1982) ("a right to a way-of-necessity exists so long as the necessity from which it arose exists") (citing *Whitfield v. Whittington*, 99 A.2d 196 (Del. Ch. 1953)).

[32] D.I. 5 at 4.

[33] *Coker v. Walker*, 2013 WL 1858098, at *3 (Del. Ch. May 3, 2013).

ways: by express grant or reservation, by implication, by necessity, or by prescription."[34]

An express easement can be created through a writing that "contain[s] plain and direct language evidencing the grantor's intent to create a right in the nature of the easement," and "[n]o specific words are required so long as the writing clearly reflects the grantor's intent to create an easement."[35] Evidence of an express grant of an easement "may be contained within the language of a deed or in a separate document."[36]

Other types of easements include an implied easement, an easement by necessity, and a quasi-easement. "[C]ourts recognize implied easements when the facts indicate that the parties to a real estate transaction intended to convey an easement but failed to do so expressly."[37] "An easement by necessity is an easement created by the presumption that where a landowner subdivides his property to create a landlocked parcel, without creating some access to that parcel, the landowner is presumed to have intended an easement to provide access across the non-landlocked

---

[34] *Judge v. Rago*, 570 A.2d 253, 255 (Del. 1990) (citations omitted).

[35] *Buckeye Partners, L.P. v. GT USA Wilmington, LLC*, 2022 WL 906521, at *29 (Del. Ch. Mar. 29, 2022) (quoting *Black v. Staffieri*, 2014 WL 814122, at *2 (Del. 2014)).

[36] *Alpha Builders, Inc. v. Sullivan*, 2004 WL 2694917, at *4 (Del. Ch. Nov. 5, 2004).

[37] *Tubbs v. E & E Flood Farms*, L.P., 13 A.3d 759, 764 (Del. Ch. 2011).

(servient) parcel to the landlocked (dominant) parcel."[38] "[The] necessity is assessed 'at the time of severance.'"[39] It is not necessary to apply the easement of necessity doctrine if an easement for ingress and egress has been explicitly created.[40]

There also exists a distinct but similar implied easement referred to as a quasi-easement which requires the proponent to prove by clear and convincing evidence "(1) the relevant properties were owned by a prior common owner who customarily used one property to benefit the other, (2) the resulting 'quasi-easement' was reasonably necessary to the enjoyment of the quasi- dominant tenement, and (3) the quasi-easement was apparent at the time that the properties were separated."[41]

---

[38] *Dewey Beach Lions Club, Inc. v. Longanecker*, 2006 WL 701980, at *2 (Del. Ch. Feb. 24, 2006), *as adopted*, 9005 A.2d 128 (Del. Ch. Aug. 21, 2006) (citing *Pencader Assoc., Inc. v. Glasgow Trust*, 446 A.2d 1097, 1099-1100 (Del. 1982)).

[39] *Harris v. Limon-Nunez*, 2021 WL 8741647, at *6 (Del. Ch. Oct. 22, 2021) (quoting *Johnson v. Bell*, 2003 WL 23021932, at *3 (Del. Ch. Dec. 11, 2003)).

[40] *See Dewey Beach Lions Club, Inc.*, 2006 WL at *2 (holding that the explicit creation of an easement for ingress and egress "defeats the application of the easement of necessity doctrine"); *see also In re Marta*, 672 A.2d 984, 986 (Del. 1996) (discussing a procedurally barred argument against the imposition of an easement for lack of evidence that there was in fact no other access to the land, but stating that "[e]ven if this issue could be considered by [the Supreme Court of Delaware], the easement created by the Court of Chancery was not based on the existence of necessity. The easement was the product of an agreement between the parties.").

[41] *Tubbs*, 13 A.3d at 764; *see also Sandie, LLC v. Plantation Owners Ass'n, Inc.*, 2012 WL 3041181, at *7 n. 39 (Del. Ch. July 25, 2012) ("Though often treated as distinct types of easements, quasi-easements and easements by necessity are more accurately described as varieties of implied easements with analytical distinctions. While satisfaction of the test

Here, the deed to each property indicates an intent to create an express right in the nature of the easement. Plaintiff's deed, transferring the land to Mr. Muchille from Harrington Commercial, LLC, states the property is "subject to the right of way reserved for the benefit of the party of the first part and his heirs, successors, and assigns, including but not limited to Jennifer G. Casey."[42] Plaintiff's deed indicates it is "the same lands and premises as conveyed unto Harrington Commercial, LLC by Deed of Francis E. Finch by Deed dated September 14, 2004[.]"[43] In the Defendant's deed, identifying the party of the first part to be Francis E. Finch, it states both that it is subject to "a Deed from Francis E. Finch unto Harrington Commercial, LLC… dated 9/14/2004," and subject to "a Deed from Francis E. Finch unto Jennifer G. Casey, in a Deed dated 9/14/2004[.]"[44] The Plaintiff's deed contains an express easement on the Plaintiff's land for the benefit of the owner of the Defendant's land.[45] The same can be said to the language existing in Defendant's deed which makes direct reference to the 50 feet wide easement in the description

---

for either typically creates a presumption that an implied easement exists, the overarching inquiry remains one of intent.").

[42] DX A at 3.

[43] *Id.*

[44] DX B at 3.

[45] DX A at 3.

of the land to be transferred.[46] The language in the deeds evidences the existence of an express easement with the Plaintiff's land as the servient estate and the Defendant's land as the dominant estate.

No analysis is needed into any implied assumption of easement by necessity or the quasi-easement since the grantor of both properties created access to the parcel through express grant of the easements evidenced in the deeds to the properties.[47] The Court has no reason to labor a search for implication where it has already found an express easement to exist.

The easement at issue here resembles cases in which a party requests a finding of an implied easement by necessity or a quasi-easement, with the parcels at one point being owned by one person, that then through sale to separate owners an assumption is made that an easement would be created for the other person to

---

[46] DX B at 3 ("Together with 50 feet wide Right of Way as shown on the above mentioned record Plan and described in Deed Record Book No. 4287, Page 214").

[47] DX A; DX B; *see Dewey Beach Lions Club, Inc. v. Longanecker*, 2006 WL 701980, at *2 (Del. Ch. Feb. 24, 2006), *as adopted*, 9005 A.2d 128 (Del. Ch. Aug. 21, 2006) (holding that the explicit creation of an easement for ingress and egress "defeats the application of the easement of necessity doctrine"); *see also In re Marta*, 672 A.2d 984, 986 (Del. 1996) (discussing a procedurally barred argument against the imposition of an easement for lack of evidence that there was in fact no other access to the land, but stating that "[e]ven if this issue could be considered by [the Supreme Court of Delaware], the easement created by the Court of Chancery was not based on the existence of necessity. The easement was the product of an agreement between the parties.").

continue the historical use of one of the properties for the benefit of the other.

However, the similarities stop there. As previously described, an implied easement

is a tool used to impose an easement where one has not been granted explicitly.[48] As

already described above, the deed to each subject property creates an express

easement.

**B.     The easement remains valid and enforceable.**

With the finding that the easement is an express easement, it is now necessary

to evaluate whether the easement has been terminated or whether it remains valid

and enforceable. Plaintiff argues that the easement should be terminated because the

alternative means of access to the Defendant's property ceases the necessity and

therefore the easement should be extinguished.

The relevant means of termination before the Court in this case appear to be

the Court's ability to extinguish an implied easement by necessity through the

cessation of necessity and perhaps the termination of an easement through

termination of purpose.[49] "[A] right to a way-of-necessity exists so long as the

---

[48] *Tubbs v. E & E Flood Farms*, L.P., 13 A.3d 759, 764 (Del. Ch. 2011).

[49] Easements can be terminated in a number of other ways, for instance by express termination or abandonment. *See, e.g. Guy v. State*, 438 A.2d 1250, 1253 (Del. Super. 1981) ("Extinguishment by release requires and express writing"); *see also Smith v. Rsrv. Dev. Corp.*, 2008 WL 3522433, at *8 (Del. Ch. Aug. 12, 2008) ("An express easement may be extinguished through abandonment by intent to abandon together with manifestation of

necessity from which it arose exists, [and] [w]hen the necessity ceases, the easement ceases[.]"[50] An easement cannot be terminated for termination of purpose when "the original purpose for the granting of the easements still exists and its use is apparently consistent with that purpose."[51] Courts have also recognized "strong policy [reasons] against the extinguishment of easements created by specific grant."[52]

As already determined, the easement at issue here is an express easement and is not one created by necessity but was created by express grant. Therefore, it cannot be extinguished through a showing that the necessity no longer exists. I also do not find the argument that the original purpose for the creation of the easement no longer exists. The language describing the easement states the right of way is to be used for ingress and egress, not the exclusive means of access to defendant's property, and

---

such intent through … unequivocal acts affirming the purpose to abandon and thereby give up ownership.") (citation and quotation marks omitted). However, the facts brought before the Court by the pro se Plaintiff to this case do not lend to these alternatives as there has been no assertion that the Defendant has expressed any desire to terminate the easement, nor has he implied through his own nonuse an intent to no longer use the easement on the Plaintiff's property such that the concept of abandonment would need to be analyzed by this Court.

[50] *Pencader Assoc., Inc. v. Glasgow Tr.*, 446 A.2d 1097, 1100 (Del. 1982) (citation omitted).

[51] *See Edgell v. Divver*, 402 A.2d 395, 397 (Del. Ch. 1979) (holding that the original purpose for the granting of the easements still existed when expressly granted for use as driveways even though the property had since become zoned for commercial use).

[52] *Vandeleigh Indus., Inc. v. Storage Partners of Kirkwood, LLC*, 901 A.2d 91, 104 (Del. 2006) (citing *Castle Assocs. v. Schwartz*, 407 N.Y.S.2d 717 (N.Y. App. Div. 1978)).

defendant still uses the easement for that original purpose of ingress and egress. Therefore, I do not find it appropriate to render the easement to be terminated or extinguished and I grant Defendant's request for quiet title in the easement allowing for the use of Mr. Muchille's property as an alternative means of access to Defendant's property.

### C.    Injunctive relief is not warranted.

Defendant seeks injunctive relief in the form of Plaintiff's removal of any barriers to access to the Defendant's property and to prevent the Plaintiff from hindering Defendant's use and enjoyment of the easement in the future.[53] To obtain a permanent injunction, a party must show: "(1) actual success on the merits of the claims; (2) that the plaintiff will suffer irreparable harm if injunctive relief is not granted; and (3) that the harm to the plaintiff outweighs the harm to the defendant if an injunction is granted."[54] Proof of these three elements is by "the preponderance

---

[53] D.I. 5.

[54] *Benner v. Couns. of Narrows Ass'n of Owners*, 2014 WL 7269740, at *11 (Del. Ch. Dec. 22, 2014) (citing *Examine, Inc. v. VantagePoint Venture P'rs 1996*, 2005 WL 1653959, at *2 (Del. Ch. July 7, 2005)).

of the evidence,"[55] which requires evidence making something more likely than not.[56]

"Generally speaking, the owners of a servient estate burdened by an easement in favor of a dominant estate may use the premises as they choose, but 'may not interfere with the proper and reasonable use by the [owner of the dominant estate] of their dominant right.'"[57]

Although the Defendant has proven to be successful on the merits of his claim for quiet title to the easement on the Plaintiff's land, the basis for his request for removal of the fence is based in the assertion that the fence hinders his right to the use of the easement, specifically the rights he claims to have to maintenance of the easement.[58] The Defendant claims the fence makes it, so he is unable to maintain the easement area because he is unable to care for the grass along their property lines because the fence was erected to close to his own fence.[59] The Plaintiff originally erected the fence with a gate across the right of way keeping the Defendant from

---

[55] *Rosenbaum v. CytoDyn Inc.*, 2021 WL 4775140, at *13 (Del. Ch. Oct. 13, 2021).

[56] *McKenna v. Singer*, 2017 WL 3500241, at *13 (Del. Ch. Jul 31, 2017).

[57] *Vandeleigh Indus., Inc.*, 901 A.2d at 96 (quoting *Copeland v. Jackson*, 683 A.2d 58, (Del. 1996) (ORDER)).

[58] Tr. 42:10–43:9.

[59] *Id.*

using the driveway to access his property, the gate has since been removed and no longer effects access.[60] The remaining fence sits outside of the 50 foot right of way, on Plaintiff's property, outside the scope of any maintenance rights granted to the Defendant along with the easement, and therefore does not "interfere with the proper and reasonable use" of the easement.[61] Defendant's request for an injunction ordering the removal of the fence is denied because he fails to succeed on the merits of his claim that the fence in any way effects his rights granted within the easement.

### D.    Attorneys' Fees and Costs

Defendant requests this court to shift the fees to the Plaintiff under the bad faith exception to the American rule, because of the prolonged, delayed litigation and frivolous claims filed in this matter and in the other three cases in other Delaware courts.

Delaware follows the American rule which states that "[l]itigants are normally responsible for paying their own litigation costs."[62] There are several exceptions to this rule, but defendant invokes just one, the bad faith exception, which requires the party seeking to shift fees to satisfy "the stringent evidentiary burden of producing

---

[60] Tr. 39:14–23.

[61] Tr. 40:2–13; *Vandeleigh Indus., Inc.*, 901 A.2d at 96 (quoting *Copeland v. Jackson*, 683 A.2d 58 (Table), 1996 WL 52613, at *1, (Del. 1996) (ORDER)).

[62] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

'clear evidence' of bad faith."[63] The conduct of the party against whom fees are being sought must be "glaring[ly] egregious."[64] The Court has shifted fees under the bad faith exception for conduct "such as forcing a plaintiff to file suit to secure a clearly defined and established right, unnecessarily prolonging or delaying litigation, falsifying records, or knowingly asserting frivolous claims."[65] The bad faith exception is not to be applied lightly, especially against a self-represented party.[66]

Defendant cites *Kuang v. Cole National Corporation*, 884 A.2d 500, 506, (Del. 2005), claiming therein the Court shifted fees due to the Plaintiff bringing the Defendant to court on the same matter on multiple different occasions, however therein the Court shifted fees when the party made excessive discovery requests while ignoring their own discovery obligations, and after making a finding that there the suit had been filed with ulterior motivations unrelated to the rights being asserted in the action.[67] Although the Plaintiff here has brought multiple actions relating to

---

[63] *Dearing v. Mixmax, Inc.*, 2023 WL 2632476, at *5 (Del. Ch. Mar. 23, 2023) (ORDER) (quoting *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)).

[64] *Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at *6 (Del. Ch. July 7, 2023).

[65] *Pettry v. Gilead Scis., Inc.*, 2021 WL 3087027, at *1 (Del. Ch. July 22, 2021) (cleaned up).

[66] *Rende v. Rende*, 2023 WL 8780558, at *4 (Del. Ch. Dec. 19, 2023) (ORDER) ("this Court does not shift fees lightly under the bad faith exception, particularly against self-represented parties").

[67] Tr. 65:4–13; *Kuang v. Cole Nat. Corp.*, 884 A.2d 500, 507 (Del. 2005) (upholding the Court of Chancery's bad faith fee shifting because of consistent refusal of discovery

the easement, he is doing so in the genuine pursuit of rights he believes he has in his property. His inquiry into whether the easement is still valid in light of the Defendant's access to his property by another means is a legitimate claim. I therefore cannot find that any of these actions were brought in bad faith.

I do not find under the present circumstances that the Plaintiff's actions amount to bad faith such that it would justify an award of fee shifting. The Defendant as the prevailing party however will be entitled to costs.[68]

## III.  CONCLUSION

In summary, the easement is categorized as an express easement and thus is not extinguished when an alternative means of access is created. The easement is valid and remains in effect, the Defendant had the privilege to use of the right of way for access to his property, and I therefore do not find that Defendant engaged in trespass.[69] I do not find it appropriate to order the Plaintiff to remove the fence

---

obligations, duplicative discovery requests, and evidence of filing the lawsuit in order to pressure payment).

[68] Under Court of Chancery Rule 54(d), "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs."

[69] The elements of trespass, a strict liability offense are as follows: "(1) the plaintiff must have lawful possession of the property; (2) the defendant must have entered onto the plaintiff's land without consent or privilege; and (3) the plaintiff must show damages." *Kuhns v. Bruce A. Hiler Delaware QPRT*, 2014 WL 1292860, at *19 (Del. Ch. Mar. 31, 2014) (quoting *Beckrich Hldg., LLC v. Bishop*, 2005 WL 1413305, at *2 (Del. Ch. June 9, 2005)).

in its entirety because the gate that was blocking Defendant's access to use of the easement has already been removed and the rest of the fence remains outside the easement area.[70] As the prevailing party, the Defendant should be awarded costs under Court of Chancery Rule 54(d).

This is my final report, and exceptions may be filed under Court of Chancery Rule 144.[71]

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery

---

[70] Tr. 39:14–40:13; Tr. 42: 10–43:3.

[71] *See* Ct. Ch. R. 144(d)(1) (In "[a]ctions that are not summary or expedited… [a] party taking exceptions must file a notice of exceptions within 11 days of the date of the Final report or Draft Report.").